A jury found Robert Lee Owens guilty under an indictment charging him with the unlawful possession of cocaine, "a controlled substance, contrary to and in violation of § 20-2-70
of the Code of Alabama 1975, as amended." The indictment was returned September 23, 1983; on October 5, 1983, he appeared with his retained attorney and on arraignment entered a plea of not guilty. On October 11, 1983, said attorney filed a motion captioned, "Motion for Withdrawal as Counsel and Continuance," alleging in pertinent part: (1) that the attorney had been retained as counsel on October 5, 1983, (2) that defendant had expressed dissatisfaction with the assistance rendered by counsel for defendant, (3) that defendant had failed to communicate with counsel concerning certain matters related to defendant's case, and (4) that said counsel could not adequately provide a defense in this case without the cooperation of defendant.
The District Attorney filed a document on October 11, 1983, captioned "Answer to Defendant's Motion for a Continuance," stating in pertinent part:
 "1. The State has no objection to defendant's counsel being permitted to withdraw for the reasons stated in the said motion; but on the contrary
 "2. The State strongly objects to defendant being allowed, by his own misconduct and uncooperative attitude toward counsel, to cause his case to be continued for the term.
 "The State, therefore, prays that defendant be required to appear before the Court with new counsel, and be further required to stand ready for trial by Thursday, October 20, 1983, the date on which his said case is presently scheduled."
When the case was called for trial on October 26, 1983, defendant was there with "Richard L. Osborne, Esq., Attorney at Law, York, Alabama, appearing in behalf of the defendant." Immediately upon call of the case, the State announced ready, and the following occurred:
"THE COURT: Is the defendant ready?
 "MR. OSBORNE: Your Honor, the defendant is ready providing that the witnesses that the defendant has subpoenaed are present.
 "THE COURT: Have you checked to see if they are present?
 "MR. OSBORNE: He's not in the courtroom, Your Honor, Culver Murry.
 "THE COURT: I don't show any witnesses here, at least in the file, about being subpoenaed. Did you file a request with the Clerk to have some witnesses subpoenaed?
 "MR. OSBORNE: I called, Your Honor, because of the distance that I had to travel, and she verbally took them down.
 "THE COURT CLERK: I will have to check with the office to see. Where was this subpoena served?
"MR. OSBORNE: This one is Fort Gordon, Georgia.
"THE COURT CLERK: Fort Gordon?
"MR. OSBORNE: Yes, sir.
 "THE COURT: The Clerk wouldn't have any authority to order somebody to appear from Fort Gordon, Georgia.
"MR. OSBORNE: Pardon me, sir?
 "THE COURT: The Clerk would not have any authority to order somebody to appear from Fort Gordon, Georgia, because it would be outside his jurisdiction or outside the State.
 "MR. OSBORNE: We also have some materials requested, too, a subpoena duces tecum, but it was also for Georgia.
 "THE COURT: Do you have a copy of that motion? I don't have it here in the file.
"(Mr. Osborne handed a document to the Court.)
"THE COURT: Thank you. *Page 307 
 "MR. OSBORNE: Two of the persons on that list did get their subpoenas.
"THE COURT CLERK: Do you remember which two?
"MR. OSBORNE: Taylor and Atkins.
 "THE COURT: While the Clerk is checking on the subpoenas, subject to that, are you ready to proceed?
 "MR. OSBORNE: Subject to the witness being present, yes, sir.
 "THE COURT: While he's checking on that let me — I'll go ahead, if there's not any objection, and start to qualify the jurors and then I'll deal with the matters about the subpoenas in just a few minutes, as soon as I can get some more information from the Clerk's office, if his office has any records or any returns on those subpoenas."
Soon after the proceedings quoted above, the names on the jury panel from which the jury was to be selected in the instant case were called and "each juror stood as his or her name was called." Thereupon, the following occurred:
"THE COURT CLERK: The subpoenas were mailed to Fort
Gordon last Thursday. We do not have a return.
"THE COURT: What about the others?
"THE COURT CLERK: Those two were served.
"THE COURT: Are they here?
 "THE COURT CLERK: I don't know if they are here or not. We don't have a return from those counties.
 "(A brief off-the-record discussion was had among the court, the court clerk, and Mr. Osborne.)
 "MR. OSBORNE: Your Honor, may I make a statement about the other witness that we have subpoenaed, Culver Murry?
 "THE COURT: Wait just one second. Do you want this on the record or off?
"MR. OSBORNE: I think off.
 "(A brief off-the-record discussion was had between the Court and Mr. Osborne.)
 "THE COURT: Ladies and gentlemen, let me go ahead and qualify you at this time in regard to specific questions of this case and regarding the special qualifications to be jurors in this case. The oath that you have taken previously regarding qualification of jurors will still apply to the question that I must ask you now.
 "(A jury was duly qualified by voir dire examination by the Court, selected by striking by the State and counsel for the defendant, and placed in the jury box.)
 "THE COURT: Ladies and gentlemen, by procedural laws of Alabama there are certain things that are required to be done outside your presence. I have certain matters in this case that must be attended to that have to be done by law outside your presence. So, being aware of that and it being close to the noontime hour, I would propose to go ahead and let you folks depart now and get your noontime meal and ask you to come back this afternoon; and in the meantime I will be going ahead and dealing with the matters that have to be done with you folks not here."
The trial judge then continued his instructions to the jury for about three paragraphs, and then the jury left the courtroom, and soon thereafter the court commenced the hearing of defendant's motion to suppress as evidence a tape recording that had been obtained, without the knowledge or permission of defendant, of a lengthy transaction and profuse conversations between defendant and Culver Murry, an acknowledged informant, and others, which was summarized by counsel for the State in part as follows:
 ". . . [A]n informant was wired with a microphone by the Ozark, Alabama, Police Department. He was sent to a location where the defendant was located and he, with the microphone taped to his body, began transmitting the conversations between himself and the defendant, which were monitored by and recorded by Detective Grant at the Ozark Police Department.
 ". . . [D]uring the recording of these events, . . . the defendant and the informant left in an automobile and traveled *Page 308 
from Dale County, Alabama, to Columbus, Georgia, with their vehicle under constant surveillance by police vehicles, including Detective Grant and Investigator Johnny Griffin, of the ABI."
The prosecuting attorney continued with the following:
 "We expect the evidence to show that there was conversation about a cocaine transaction to be engaged in between the informant and the defendant wherein the defendant agreed to procure cocaine for the informant for a sum of money, which was provided by the Ozark Police Department and the ABI. We expect the evidence to show that the defendant and the informant had their discussion about where the cocaine was to be procured, namely, in Columbus, Georgia; and that the transaction was monitored and observed by Ozark police officers, Dale County Sheriff's officers, ABI officers and GBI officers and Columbus police officers.
 "After that transaction took place, we expect the evidence to show that the defendant and the informant proceeded in the same automobile back into Phenix City, Alabama, at which time they were stopped by the officers who had been following them in a police vehicle and had been monitoring the broadcast conversation and recording it. And we expect the evidence to show that the recording that we have was made contemporaneously with that monitored — with those monitored conversations. We expect the evidence to show that the substance was seized at the time of the stop on their return to Alabama."
Soon after the statement quoted above by the prosecuting attorney, the trial court indicated that it was ready to proceed with the hearing on defendant's motion to suppress the proposed evidence and the following then occurred:
 "THE COURT: Mr. Osborne, are you ready to proceed? Is there anything further you want to put in regard to your motion?
 "MR. OSBORNE: Are we going to take up the motion for continuance after the hearing?
 "THE COURT: What motion for continuance do you have at this point?
"MR. OSBORNE: I don't have it written down.
 "THE COURT: All right. Go ahead and recite it for the record.
 "MR. OSBORNE: It's not a written motion because I didn't —
"THE COURT: Go ahead.
 "MR. OSBORNE: Due to the fact that I just came into this case a couple of weeks ago, and at that time the DA's office . . . informed me that the case would be tried probably on the nineteenth, and based upon several conversations with him it was determined that we would at least have two days' notice before the trial itself. Based upon this, I was instructed to call him back the day before to make sure the date of the trial. I did so, and he informed me on that date — which probably was the nineteenth — that the trial would be held on the twenty-sixth. That was in the afternoon.
 "The very next day, which would be on the twentieth, I called the Clerk's office and immediately asked that certain witnesses be subpoenaed. The state your Honor has the resources with which to locate, find, and bring forth their witnesses into court. We only requested that the informant, who was Culver Murry, be brought into court as a witness for the defendant. We gave him his rank, his social security number, his place of employment, and his location.
". . . .
 "MR. OSBORNE: Your Honor, we feel that Mr. Murry, as the informant, is an important witness in this case and it would be not in fairness or justice would not be done in this case if Mr. Murry is not here and available to testify. Mr. Murry is the person that they used to establish what we think to be probable cause we feel that would be the minimum *Page 309 
that they should have in order to be in this investigation.
 "THE COURT: Now, you subpoenaed him through the Clerk's office?
"MR. OSBORNE: Yes, sir.
"THE COURT: So you know where he is.
"MR. OSBORNE: Yes, sir.
 "THE COURT: And where is it that you subpoenaed him from — or where is his present location?
 "MR. OSBORNE: He's at Fort Gordon, Georgia. He's currently in the military service.
"THE COURT: In the state of Georgia?
 "MR. OSBORNE: Yes, sir. The commander informed me that the state subpoena would be honored and they would get him here as well as some records that we had subpoenaed.
 "THE COURT: To the best of your knowledge the Clerk has mailed a copy of the subpoena to him?
"MR. OSBORNE: Yes, sir.
"THE COURT: But he's not here at this time?
"MR. OSBORNE: He's not here to testify today.
". . . .
 "THE COURT: Mr. Osborne, you have been in the case since around the 11th of October, you say? Is that when it was?
 "MR. OSBORNE: I'm not quite sure, your Honor. I believe it was later than that. It was about — it was a Monday, the Monday preceding the 19th — Friday, preceding the nineteenth. Friday afternoon I think was Mr. Owens' contact with me.
 "THE COURT: That would be October 14th. Now, the file shows that Mr. Owens was represented by different counsel at the time of the arraignment.
"MR. OSBORNE: Yes, sir, he was.
 "THE COURT: So he did have counsel at arraignment and before that time.
"MR. OSBORNE: Yes, sir, he did.
 "THE COURT: Let me be in recess just one second. If there are any witnesses that the state may need in regards to laying the proper foundation in addition to Mr. Grant here, I would ask you to go ahead and get those people here. Let me be in recess for one moment.
". . . .
 "THE COURT: Mr. Osborne, would it be fair to assume that Mr. Murry is in the military, that he was stationed at Fort Rucker —
"MR. OSBORNE: Yes, sir, he was.
"THE COURT: — at the time at this went on?
"MR. OSBORNE: Yes, sir.
 "THE COURT: And he's been since transferred to Fort Gordon?
"MR. OSBORNE: Yes, sir.
"THE COURT: In Georgia?
"MR. OSBORNE: Yes, sir.
 "THE COURT: Was he transferred in the normal course of his duties or is there any reason for the transfer that you are aware of or any evidence at this point?
 "MR. OSBORNE: I could only go by speculation, Your Honor, if that — and we would get that from one of our witnesses, that he had a charge in Ozark, and as a result of his participation in this event he was transferred.
"THE COURT: By the United States Army?
"MR. OSBORNE: Judge, I don't know the details.
 "THE COURT: Well, I'll be glad to hear any matter that you have on that, after we get through on the motion to suppress.
 "Well, are you prepared to go into that at this time, though?
 "MR. OSBORNE: Judge, we also needed him for that — to proceed with our motion.
 "THE COURT: I understand. I'm inquiring as to — you say that you speculate there was some reason for the transfer. I'm saying I'll be glad to hear any evidence that you may wish to present about the reason for the transfer. If you wish to present any, I'll certainly *Page 310 
give you an opportunity now or after the motion to suppress, whichever —."
Soon thereafter, the court proceeded for approximately forty pages of the transcript to hear the motion to suppress, as to which four witnesses testified. The motion to suppress was overruled by the trial court. Before ruling thereon, however, the court, ruling on the motion to continue the case, stated the following:
 "All right. Let me deal first with the motion for a continuance. That has mainly to do, as I can see it, based upon the absence of a person subpoenaed by the defendant by the name of Culver Murry, who is not in attendance. It would appear from the evidence that he is presently serving in the United States Armed Services in Fort Gordon, Georgia, outside the jurisdiction of this State. There is no evidence here that the State has encouraged him or helped him to leave the State or that it has withheld any information about his location. It appears that the identity of this informant has been known to the defendant, since the defendant is the one who subpoenaed him. Accordingly, the motion for continuance will be overruled and denied."
In addition to testimony of witnesses for the defendant to the effect that Culver Murry had importuned defendant to purchase some cocaine for Murry and that defendant had expressed himself as reluctant to do so, the defendant testified on the trial that he had been overpersuaded by Murry to go with Murry in an automobile furnished by Murry to Columbus, Georgia, where with money furnished by Murry, who had been furnished the money by law enforcement authorities for such purpose, defendant, without any intent to receive any compensation whatever for the transaction, bought the cocaine for Mr. Murry from a well known dealer in Columbus, Georgia, at the purchase price of $560. Defendant further testified that much of the monitored telephone conversation between him and Murry was not on the tape played to the jury. While being cross-examined as to his expressed "unwillingness to be a part of this transaction," he testified:
 "You remember the part of the tape where he said `will you help me sell it?' and I said, `no, you sell it yourself.'
 "Q. Okay. That reveals your unwillingness to participate in this transaction?
"A. That's right. I'm not a dealer.
 "Q. How about the time you said, `I'm going to tell you how to sell cocaine'; does that show your unwillingness to participate in this transaction?
 "A. He asked me how to do it, and I knew. I had learned in Viet Nam how it was done.
"Q. So you were going to tell him how to do it?
"A. Yes, I would have showed him.
 "Q. Do you remember telling him that he could have made $1,000.00 out of it, that he would already have $1,000.00 if he had come to you the night before? You remember that on the tape?
"A. He had said he wanted to look the night before.
 "Q. Would you tell me one the other place on that tape, Mr. Owens, that indicates in any way that you are an unwilling participant in this transaction?
 "A. It's a whole lot on there; over half the tape I can't hear. What I said is not on the tape. The only thing I have to go on is what he asked.
 "Q. What did you say? Tell the jury, if you will, what did you say to Mr. Murry to convey to him your horror and unwillingness to participate in this transaction. Tell them what you said.
 "A. Well, I didn't say anything not to go to help him get that — not to go and get it, I didn't say anything.
"Q. You were willing to do that?
"A. To help him, yes.
 "Q. And you didn't know that Deke [the seller] was one of the biggest dealers in Columbus, Georgia?
"A. No.
"Q. But you knew that he did cocaine?
"A. (No answer) *Page 311 
"Q. Is that right?
"A. I knew that he would be around sometimes people
that do.
"Q. And he could get it for you?
 "A. I didn't know if he could get it or not; that's why I called and asked."
During the redirect examination of defendant, he testified:
"Q. Do you have any prior arrests for any felonies?
"A. No.
"Q. Do you have any arrests at all?
"A. No, nothing but a speeding ticket.
"Q. The only thing you have is a speeding ticket?
"A. Yes, I do.
". . . .
 "Q. Mr. Owens, it was asked whether or not you knew Dickie — what's his name? — Dickie Thomas or Willie Thomas. You know a lot of people, do you not?
 "A. Yes, I lived in Columbus. The year before my wife and I got married I came down from New York with my first sergeant.
"Q. You know a lot of people, do you not?
"A. Yes, I do.
 "Q. All the people you know are not drug dealers or drug users, are they?
"A. No, sir.
 "Q. All the people you associate with are not drug dealers or drug users, are they?
"A. No.
 "Q. As a matter of fact, you and I were in an organization one time, weren't we?
"A. Yes.
". . . .
 "Q. Mr. Owens, you seem to have pretty good knowledge of drugs, as you said earlier; is that correct?
"A. Yes.
"Q. Have you in fact used marijuana?
"A. Yes, I have.
"Q. And have you used cocaine?
"A. Yes, I have.
 "Q. Did Murry know this, Culver Murry knew that you used —
"A. Yes, he did.
 "Q. Did you at some point tell him that you had used or was he present at the time that you used?
 "A. We had smoked marijuana together. We had never did no more than talk about cocaine together.
 "Q. Let me ask you this: in the four months that you knew him he asked you several times to participate as a result of a conversation that you all had had?
"A. To buy?
"Q. Yes.
"A. Yes, he had asked me several times.
"Q. And each time you turned him down up to —
"A. Yes, I did.
"Q. And each time he offered you money?
"A. Yes, he did.
"Q. And this last time he provided the money?
"A. Yes, he did.
 "Q. And did you tell him you did not have any money to make a buy?
"A. Yes, I did.
 "Q. Then at that point did he tell you how much money he had to make the buy with?
 "A. No, he didn't tell me at that time how much he had. He just stated what he would like to get.
"Q. Did you have any monies of your own?
"A. I had about $12.00, I think.
 "Q. The job that you are working on, how often do you get paid?
"A. Every two weeks.
"Q. How many hours do you work?
"A. Eighty hours — forty a week.
"Q. What hours do you work?
"A. I work from 7:15 until 4:15."
The trial court in its oral charge to the jury instructed the jury extensively as to the issues raised by the defendant's plea of not guilty and his defense of entrapment. *Page 312 
One of the issues presented by appellant is as to whether the trial court was in error in refusing some of the written charges requested by defendant as to the defense of entrapment. Appellee responds to such issue by a contention that the charges refused were substantially covered by the court's oral charge.
That the jury found considerable difficulty in arriving at a verdict is emphasized by the fact that after the case was submitted to the jury and after the jurors had deliberated "for some while the jury returned to the court room" and requested further instructions as to the defense of entrapment and as to the contents of the tape that had been played back to them of the conversations that had taken place among defendant, informer Culver Murry, and others, just before, during, and after the trip they made from Ozark, Alabama to Columbus, Georgia, for the purchase of the cocaine. The jurors were unable to arrive at a verdict on the day the case was submitted to them; they were excused and allowed to separate for the evening with instructions to return and resume deliberations at 9:00 A.M. on the next day. At 9:45 A.M. the following day, the jury made two inquiries of the court. In one of the inquiries, the court was requested to clarify the law as to the defense of entrapment. The trial court responded to such request by further instructions on the subject contained in about one page of the transcript. Both parties announced satisfaction with the court's instructions then given the jury.
We are not convinced that the trial court committed reversible error in its refusal of any of defendant's requested charges as to the defense of entrapment.
By another issue presented in appellant's brief, he contends the trial court committed error prejudicial to defendant in overruling defendant's motion to suppress evidence of the electronically recorded conversations among defendant, Murry, and others. He argues that they were unconstitutionally obtained, in violation of defendant's right to be secure in his person, house, papers and effects, against unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the Constitution of the United States and Art. I, § 6, of the Constitution of Alabama of 1901. This contention should not be ignored, but we prefer to defer further consideration thereof in this part of our opinion.
Another issue presented in appellant's brief challenges the use of the electronically recorded conversations between him and Culver Murry by reason of defendant's inability to cross-examine Culver Murry during the trial of the case. He argues that defendant was thereby deprived of his right "to be confronted with the witnesses against him," as provided by the Sixth Amendment to the Constitution of the United States and Art. I, § 6, of the Constitution of Alabama of 1901. This issue also deserves serious consideration, but we will not pass upon it at this time for the reason that what is hereinafter made a part of this opinion will make unnecessary and inadvisable the determination of this particular issue presented by appellant.
Although a serious and difficult question is presented by more than one of the issues presented in appellant's brief, we are persuaded that the predominant issue is whether the trial court was in error in not continuing or postponing the trial of the case as requested not only by the then recently retained trial attorney but also by the previous attorney who had only recently withdrawn as counsel for defendant. We are persuaded also that the inability of defendant's trial counsel to obtain a continuance or postponement pervades, to the detriment of defendant-appellant, the other issues raised by appellant.
Before further consideration of the question as to whether the trial should have been continued or postponed, we should not that, in our opinion, defendant's trial counsel prepared himself to defend the case commendably well in the short time he was defendant's attorney, and it can hardly be believed that he could have defended him so well without his having devoted all of his available time exclusively to the particular case. It is to be noted also that there *Page 313 
is no evidence of any conflict between him and defendant as to how the defense should be handled. In this connection, it should be said that defendant took the stand and testified comprehensively as to pertinent activities between him, a journeyman carpenter employed by Fort Rucker, Corps of Engineers, and Murry, a soldier at Fort Rucker, who apparently had been transferred to Fort Gordon, Georgia, at the time of the trial of the case.
We do not know, and there is no inkling in the record before us as to the reason, why defendant did not obtain the services of a local attorney to defend him or of some attorney closer to the forum than was the attorney who ably represented defendant upon the trial, who, according to the record, is listed as an attorney at York, Alabama, which is almost the westernmost municipality in Alabama and separated from the easternmost city in Alabama, in which the trial occurred, by approximately two hundred miles. Furthermore, it is obvious that the attorney who had been allowed to withdraw as counsel for defendant appreciated the importance of giving the attorney who was to replace him adequate time within which to prepare for the trial, which is evidenced by that part of his motion stating that he "moves this Court to continue this case for one term of court in order that the aforementioned Robert Lee Owens may obtain other counsel." Defendant did obtain other counsel, but we do not think his other counsel had adequate opportunity to prepare to defend the case on October 26, 1983, when the trial thereof commenced. Perhaps he should have been more insistent on his motion for a continuance when the case was called for trial, but he is not to be blamed, we think, for what may be considered a concession by him that he would be ready if he could be assured of the attendance of Culver Murry. Furthermore, he is not to be blamed as much as an experienced lawyer in Phenix City should have been blamed for not realizing that Culver Murry, while at or near Fort Gordon in Georgia, would not have been within the jurisdiction for service of process, as he was while at or near Fort Rucker. In addition, we do not think he is to be blamed for not declining to represent defendant on the trial when requested to do so by defendant. We find practically nothing in the record as to the circumstances of his acceptance of employment as defendant's attorney, but we do not think he is to be blamed for such acceptance, especially as it is shown by the record during the process of the sentence hearing or the hearing as to whether defendant should be granted probation, which the court denied, that defendant's attorney made it known that he and defendant had "known each other some six years." The attorney stated also:
 "We have participated in other civic activities, particularly in youth activities, summer recreation, and helped create a ballpark and ball fields, and I have known him in that regard and have known him to work in that regard. I have known him, now, to be called `Man Owens,' but I have never known him to be called `Sweet Man,' which indicates that he was, I guess, an instance sort of like a pimp. I wish to add that Mr. Owens is married, I know his wife, his family, and I know them to be together, and he was a dedicated family man."
We realize that the general policy is to the effect that a trial court should not be reversed for its refusal to grant a defendant's motion for a continuance of the case unless such action clearly constitutes an abuse of the discretion vested in the trial court and that a trial court is hardly ever reversed for its denial of a motion for a continuance. The general rule is sound and should be rigidly adhered to, but we should not overlook the reason for the rule, which is that the trial court is in a better position than an appellate court to determine whether the continuance should be granted. We do not think that such reasoning applies with equal force to the question now under consideration. We are inclined to think that the trial court could not have reasonably foreseen, as now can be seen by the benefit of hindsight, the difficulties that defendant's counsel encountered during the trial of the case in his dedicated effort to defend his client. He did all that he could to defend him successfully *Page 314 
in the presentation of a strong defense of entrapment, as to which the jury could have for good reason decided either way. Whether it would have decided the issue in favor of defendant if the case had been continued or postponed for a few weeks, no one can know with certainty. Nevertheless, the case could have been tried after a postponement of a few weeks without any questionable impairment of defendant's constitutional right to effective assistance of counsel or his constitutional right to confrontation by witnesses against him, which we think defendant's counsel was unable to provide, not by reason of any fault of his own, but by reason of his not having adequate time to prepare and present defendant's defense of entrapment.
The judgment of the trial court should be reversed and the cause remanded for a new trial.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur, except BOWEN, P.J., who dissents.