McMILLAN, Judge.
The appellant, Mildred Law, was found guilty of the offense of theft of property in the second degree, in violation of § 13A-8-4, Code of Alabama (1975). She was sentenced to twenty-five years in the state penitentiary, pursuant to the Habitual Felony Offender Act.
The record indicates that after the jury was struck, the following transpired:
“[DEFENSE COUNSEL]:
I asked for a continuance based on the fact that the jury panel, as well as the jury as constituted does not represent a fair cross-section of the population of the State of Alabama. And my client cannot get a fair trial under the laws of the State of Alabama, the Constitution of the U.S. So, I asked for a continuance until a more representative jury of my client’s or the defendant’s peers can be assembled.
“[PROSECUTOR]:
“Judge, our response, of course, the defendant is black. It’s our response there were ten blacks on the panel of 38. Even the defendant’s attorney, himself, struck one of the black jurors. We don’t think he has a valid objection.
“THE COURT:
“Any black on the Jury?
“[PROSECUTOR]:
“There is one black.
“THE COURT:
“I don’t think that matters but I am going to deny the motion anyway.
“[DEFENSE COUNSEL]:
“We except, Your Honor.”
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court ruled that a state criminal defendant could establish a prima facie *77 case of racial discrimination, violative of the Fourteenth Amendment, based on the prosecution’s use of peremptory challenges to strike members of the defendant’s race from the jury venire, and that, once the defendant had made the prima facie showing, the burden shifted to the prosecution to come forward with a neutral explanation for those challenges. Thereafter, the Supreme Court determined that the Batson decision was to be applied retroactively. Griffith v. Kentucky, — U.S. —, 107 S.Ct. 708, 93 L.Ed.2d 648 (1987). The Alabama Supreme Court has also determined that the Batson decision is to be applied retroactively under the Alabama Constitution. Jackson v. State, 516 So.2d 768 (Ala.1986). “The trial court must give the district attorney an opportunity to come forward with race-neutral explanations for his use of the peremptory strikes. If he is unable to do so and the trial court determines that the facts establish a prima facie case of purposeful discrimination, [the appellant] is entitled to a new trial.” Ex parte Owens, [Ms. 85-1008, January 9, 1987] (Ala.1987).
This case is remanded to the trial court with instructions to give the district attorney an opportunity to come forward with race-neutral explanations for his use of the peremptory strikes. Should the trial court find no prima facie showing of purposeful discrimination, a return shall be filed with this court containing the evidence at this hearing and the trial judge’s findings following the hearing.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.
ON RETURN TO REMAND
McMILLAN, Judge.
The appellant and her co-defendant, Freddie James Witherspoon, were charged with the theft of four wire wheel covers from a T.G. & Y. store. The appellant raised four issues on appeal.
I
This cause was remanded to the trial court on February 10, 1987, with instructions to give the district attorney the opportunity to come forward with race-neutral explanations for his use of peremptory strikes. A return has been filed with this court containing the trial judge’s findings and the evidence adduced at the hearing. The record indicates that the prosecuting attorney was able to state his reasons for striking the potential black jury members based on non-racial grounds. The trial judge thereafter determined that the appellant was not entitled to a new trial under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Based on the prosecutor’s testimony at the hearing and the trial judge’s findings of fact, we concur with that determination.
II
The appellant argues that the trial court erred in denying his request for a continuance because the prosecutor did not fully comply with the appellant’s motion for production and the trial court’s order concerning the disclosure of witnesses who were to testify. Specifically, the appellant alleges error in the denial of his motion for a continuance just prior to trial, when the defense counsel became aware that the appellant’s co-defendant might testify. The prosecutor responded that in the appellant’s motion to produce there was no request for the list of State’s witnesses, and that a partial list of the witnesses was supplied to the defense counsel as a courtesy. Further, the prosecutor stated:
“It’s our position the Defendant should have known that the eo-Defendant in this case or other persons involved in this matter might be called as a witness. Nothing in his testimony will tend to exculpate the Defendant, rather it would tend to convict her. They asked for exculpatory evidence and we did not have any. I don’t think they can claim surprise if a person involved in the crime may testify against the Defendant in this case. We don’t think a Continuance is due to be granted in the case.”
The motion to produce, filed by the appellant, contained a general request for exculpatory materials, any admissions or state *78 ments given by the appellant, any tangible objects or documents obtained or belonging to the appellant, or the name of any other person relating to the charges against the appellant. There was no request for a list of State's witnesses.
In denying the appellant’s motion for continuance, the trial court stated:
“As far as information about impeachment as to Freddie Lee, I don’t know there’s anything in writing and everybody else knows he pled guilty to a felony offense yesterday, which you can ask him that and I think you can use that if he testifies for impeachment purposes about that conviction.
“The D.A. stated there has been no deal made. All I can say on that, I don’t know. I think that if they put him on the stand you can ask him whether or not this case — he was charged with this offense and if it has been disposed of. I think that’s probably an appropriate question.”
This court has written:
“It is well settled law that a motion for a continuance is addressed to the sound discretion of the trial court. McConico v. State, 458 So.2d 743 (Ala.Cr.App.1984); Carroll v. State, 445 So.2d 952 (Ala.Cr. App.1983). Absent a clear showing that it has abused its discretion, the trial court’s decision will not be reversed on appeal. Dawkins v. State, 455 So.2d 220 (Ala.Cr.App.1984); Owens v. State, 460 So.2d 305 (Ala.Cr.App.1984).”
Hamilton v. State, 496 So.2d 100, 108 (Ala.Cr.App.1986). See also Sims v. State, 428 So.2d 162, 164 (Ala.Cr.App.1982); Richardson v. State, 476 So.2d 1247, 1248 (Ala.Cr.App.1985).
Furthermore, “there is no requirement that compels pre-trial discovery of the identity of a State’s witness. Evans v. State, 338 So.2d 1033 (Ala.Cr.App.1976); Thigpen v. State, 49 Ala.App. 233, 270 So.2d 666 (1972).” Wicker v. State, 433 So.2d 1190, 1196 (Ala.Cr.App.1983). See also Peoples v. State, 418 So.2d 935, 937 (Ala.Cr.App.1982).
III
The appellant contends that the trial court erred in denying her motion to suppress the testimony of her co-defendant. She bases this argument on the prosecutor’s failure to disclose in compliance with her motion for production, the fact that the co-defendant would be testifying. However, the trial judge properly allowed the co-defendant to testify. As stated previously, “the appellant has no absolute right to compel pre-trial discovery of the identity of a State’s witness.” Willis v. State, 441 So.2d 1030, 1033 (Ala.Cr.App.1983).
Moreover, the record indicates that on cross-examination of the co-defendant, the defense counsel was able to use his previous sworn testimony from the preliminary hearing to impeach his credibility and, furthermore, elicited testimony from the co-defendant that his charge for the instant offense was nolprossed in return for his guilty plea in another case.
IV
The appellant argues that the trial court erred in denying her motions for judgment of acquittal because, she says, the State failed to meet its burden of proof.
According to § 13A-8-2, Code of Alabama (1975):
“A person commits the crime of theft of property if he:
“(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property; or
“(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property.”
Gloria White, an employee at T.G. & Y., testified that she had known the appellant and Freddie Witherspoon for a number of years. She testified that, on November 4, 1984, she observed the appellant and With-erspoon enter the store, noted their appearance, and, because, she testified, they had a bad reputation in the community for shoplifting, she “was kind of paying attention” to them. She observed them walk back to the electronics, automotive, and sporting *79 goods department. Thereafter, she was unable to see them for approximately 10 to 15 minutes.
Howard Blevins, a sales clerk with T.G. & Y., testified that he waited on a black couple that afternoon who asked to look at wire wheel covers. They informed Blevins that they wanted 15-inch wheel covers, so he went back to the stockroom and found a box of them. He testified that they come packaged four to the box and that he carried a full box back to the customers. They took one of the wheel covers out of the box to observe it and decided they wanted all four. Blevins testified that he told them “it would be a lot easier to just pick up the entire box and carry them to the front of the store to check them out.”
Kenneth Robinson, a maintenance employee with T.G. & Y., testified that he was present when Howard Blevins waited on the couple, and he identified the appellant as the female customer.
Gloria White testified that, when she again observed the appellant and Freddie Witherspoon, Freddie was walking in front of the appellant with a box in his hands. She testified that she assumed it was something from the electronics department and that she asked him to stop because the employees were required to log everything that came from the electronics department. However, she said, Witherspoon failed to respond and kept walking. Witherspoon walked out the door and the appellant walked through a set of registers, did not give the cashier any money, and walked out the door. White testified that they checked every possible place that the appellant and Witherspoon could have paid for the wheel covers, but concluded that they were never paid for. By the time White got help to try to catch the couple, they were gone. The police came to the store after being notified.
Blevins also testified at trial that the value of the wire wheel covers exceeded $25.
Section 13A-8-4(e), Code of Alabama (1975), requires “The theft of property which exceeds $25 in value and which is taken from or in a building where said property is sold or stored.” The appellant’s actions, when viewed in a light most favorable to the State, could be found to constitute theft of property. See Rainer v. State, 398 So.2d 771 (Ala.Cr.App.1981); Craig v. State, 410 So.2d 449 (Ala.Cr.App.1981). See also Barbee v. State, 395 So.2d 1128 (Ala.Cr.App.1981).
OPINION EXTENDED; AFFIRMED.
ALL THE JUDGES CONCUR.