The appellant was indicted by the Montgomery County Grand Jury for securities fraud under § 8-6-17, Code of Alabama 1975. Appellant's trial resulted in a verdict of guilty with a fine of $5000.00 assessed by the Jury. The trial judge sentenced the appellant to a three year prison term. Subsequently, the trial judge granted a suspension of sentence upon the conditions that appellant be placed on probation for ten years, that appellant serve one year in the penitentiary, that appellant make restitution to defrauded investors, and that appellant pay the fine assessed by the jury. Appellant gave oral notice of appeal (R. p. 246) and filed a timely motion for new trial, which was denied (R. p. 248). Hence, this appeal is properly before this Court for review. *Page 695 
The State presented the testimony of seven witnesses, Walter Berry, Jason Overby, Joyce Blackburn, James Harris, Arnold Kidd, Abe Boykins, and Ben Davis, each of whom was an investor in a proposed bank, the United Memorial National Bank. The witnesses' investments ranged in amounts from $125.00 to $5,000.00. Each investor intended to purchase stock in the proposed bank with his or her investment, such stock to be issued after the bank had been granted a charter from the United States Government. From the testimony, it appeared that the investors had been contacted either in person or through the media and encouraged to invest in the proposed bank which was organized to serve the local black community. The investors' testimony showed that their investments were made during the years 1973 to 1975. During this period of time, investors received periodic correspondence from the appellant, Chairman of the Board which was organizing the bank, which purported to report on the progress of the sale of stock. In one piece of correspondence an opening date for the bank was targeted for October, 1976. However, some of the investors testified that they began to become concerned when they no longer received correspondence from appellant. Others' suspicions were aroused when they noticed the absence of a listing for the bank in the new telephone directory in February of 1977. Efforts to get in touch with appellant by mail went unanswered. In the end, complaints were made to the various State agencies having jurisdiction to conduct an investigation. Each investor testified that his or her money had not been refunded, nor had any stock certificates been issued to any investors. The receipts which some of the investors received were signed by appellant. Other investors who did not receive receipts for their investment noted that appellant endorsed their checks and deposited the checks in Central Bank of Montgomery. The receipts and cancelled checks, or copies thereof, were received into evidence by the trial judge.
Henry McLain testified that he was a member of the Board of United Progressors, Incorporated, the parent organization of the United Memorial National Bank. The Board was composed of ten members with appellant having been chosen as Chairman because of his experience in the banking business. Henry McLain functioned as Secretary of the Board by taking minutes of the weekly meetings. According to the witness, Board members initially paid a $1,500.00 fee, then $30.00 a month, and later $50.00 a month to the corporation to cover office expenses, advertising costs, and business travel expenses (R. p. 92). These funds were maintained in a checking account in the name of United Progressors, Incorporated at Central Bank of Montgomery. The Board authorized appellant and Reverend McKinney, another Board member, to sign checks jointly in order to draw funds from the account. Appellant was never authorized by the Board to draw a salary for his services. Neither was the appellant authorized to pay any of his personal expenses with checks drawn on the account of United Progressors, Incorporated.
The Board had established an escrow account at First Alabama Bank where all investors' funds were to be deposited. When the funds reached the requisite amount of $1,250,000.00, the bank would be issued a charter by the United States Government and could distribute stock to the investors (R. p. 90). However, until that amount was collected through stock subscription agreements, investors' funds were to be deposited only in the escrow account at the First Alabama Bank. The Board never authorized appellant to deposit investors' funds in the account at Central Bank in Montgomery (R. p. 90). Henry McLain's testimony revealed that appellant had sole responsibility for depositing funds received from investors. However, Henry McLain could not recall appellant ever having made a financial report to the Board on the status of the funds in the escrow account (R. p. 93).
Henry McLain testified that, in October, 1976, permission to sell stock in the proposed bank was withdrawn by the United *Page 696 
States Government. Each Board member received a copy of the letter from the Comptroller of the Currency withdrawing permission to organize the bank. At a subsequent board meeting, Henry McLain recalled that appellant told the Board that the Comptroller's letter "didn't mean very much" because an extension of time would be granted pending an appeal from the Comptroller's decision (R. p. 96). According to Henry McLain, appellant went to Washington sometime after receipt of the Comptroller's letter. When he returned, appellant told the Board that an extension of time had been granted, but he had nothing to that effect in writing from the Comptroller's office.
Subsequent to appellant's trip to Washington, the Board members stopped selling stock in the bank because a contact had been made with a prospective investor who apparently was interested in purchasing the remaining balance of unsold stock (R. p. 112). The Board authorized appellant to pursue this possibility further. Afterwards, the Board members had no further contact with appellant, who was traveling with the prospective investor in parts unknown.
Leon McLain, brother of Henry McLain, testified that he had been a member of the Board of United Progressors, Incorporated since its inception in 1972. Leon McLain noted that appellant was the only member of the Board with any experience in the business of banking. Leon McLain testified that two accounts were set up in two different banks. The United Progressors' account at Central Bank was where the Board members' monthly fees were to be deposited for use in covering operating expenses. The other account was set up as an escrow account at First Alabama Bank. It was this account alone into which investors' funds were to be deposited. Leon McLain recalled that appellant had complete control of depositing investors' funds and Board members' monthly fees into the two respective accounts. Leon McLain could not recall ever having seen a financial report from appellant on the progress of the fund raising effort. Appellant told Leon McLain that, if he so desired, he could inspect the bank records at the bank. However, Leon McLain never made an inspection of the bank records.
According to Leon McLain, Reverend McKinney was the Treasurer of United Progressors, Incorporated. However, the bank statements containing cancelled checks signed in blank by Reverend McKinney were sent to the office of United Progressors, thereby escaping Reverend McKinney's scrutiny (R. p. 127).
Robert Ziner testified that he was a national bank examiner employed by the Comptroller of Currency in the Treasury Department of the United States Government and that he had been so employed since 1968. In examining the records of national banks, Mr. Ziner's function was stated to be that of determining asset quality, asset and liability validity, the liquidity of the bank, and compliance with the law. Mr. Ziner was qualified as an expert in his field.
In August, 1976, Mr. Ziner conducted an examination of the records of the United Memorial National Bank in organization. Mr. Ziner's examination began with a review of the records of the escrow account at First Alabama Bank. Mr. Ziner noted there were some cancelled checks from the escrow agent, payable to the appellant, ostensibly representing stock subscription refunds (R. p. 136). Mr. Ziner next reviewed the records given to him by appellant at the proposed bank's office. Mr. Ziner stated that these records were very difficult to work with because investors' funds had been commingled with the funds on deposit at Central Bank (R. p. 137). Nevertheless, Mr. Ziner was able to detect irregularities. Funds removed from the escrow account for the purpose of refunding stock subscriptions had been used for other purposes. Further investigation revealed that the amount of funds deposited in the escrow account was considerably less than the amount which should have been deposited, according to the ledger showing total stock sales. According to Mr. Ziner, over $70,000.00 was paid by investors for capital *Page 697 
stock, all of which should have been deposited in the escrow account. However, Mr. Ziner found that only $44,000.00 was deposited in the escrow account. The escrow account records and the stock ledger list were in further conflict with regard to the amount certain individual investors were supposed to have paid in as an investment.
Richard Payne, an examiner for the Alabama Securities Commission, testified that he became involved in the investigation of the United Memorial National Bank in organization as a result of numerous investors' complaints to the Commission. Mr. Payne's testimony with respect to discrepancies between the escrow account records and the stock ledger list substantially corroborated that of Mr. Ziner. Mr. Payne's information, however, was obtained through the execution of a search warrant on the office of the United Memorial National Bank in June, 1977. By the use of a subpoena, Mr. Payne discovered the records of the United Progressors, Incorporated at Central Bank. These records revealed appellant had used investors' funds to pay for his personal expenses, such as mortgage payments on his personal residence, installment payments for furniture in his personal residence, installment payments for his personal automobile, and payments for utilities at his personal residence (R. p. 171). The trial judge admitted, over objection by the defense, various documents into evidence obtained through the search warrant executed in June, 1977, and through the subpoena in December, 1977. The State showed the proper chain of custody for all items received into evidence.
Mr. Payne identified a copy of the letter, dated October 5, 1976, from the United States Comptroller of the Currency which revoked permission to organize the United Memorial National Bank, and which ordered the refund of subscribers' funds. Mr. Payne next identified a bank statement, dated November 30, 1976, which showed a $19,000.00 deposit during the previous thirty day period to the account of United Progressors, Incorporated at Central Bank. This deposit represented a transfer of the last remaining funds in the escrow account at First Alabama Bank. As he examined the microfilmed cancelled checks, dated subsequent to the $19,000.00 deposit, Mr. Payne recorded all the information from each check on a list, which was admitted into evidence over defense counsel's objection. Mr. Payne identified check number 1128 as one of the checks drawn on the United Progressors, Incorporated account subsequent to the $19,000.00 deposit. The check was payable to the order of appellant and marked with the notation, "Cash refund: Ruth Barber, $250.00; James Harris, $1,200.00; A. Boykins, Jr., $800.00; Ben Davis, $125.00; Jason Overby, $625.00" (R. p. 179). The check, dated November 9, 1976, was signed jointly by appellant and Reverend McKinney in the amount of $3,000.00. Mr. Payne was allowed to testify over objection that all of the people listed on the check told Mr. Payne that they had received no refunds whatsoever on their stock subscriptions. Bank statements revealed that by May, 1977, the balance of the United Progressors, Incorporated account had dwindled to $70.00.
Reverend Eddie McKinney, Treasurer of United Progressors, Incorporated, testified that his primary function in that capacity was to co-sign checks drawn on the account at Central Bank. Reverend McKinney did not handle any funds received through the sale of stock, nor did he ever make deposits to the account at Central Bank. Reverend McKinney never examined the records at Central Bank and never examined the cancelled checks contained in the monthly statement of the United Progressors, Incorporated account. Reverend McKinney testified further that he did not have any responsibilities with respect to the escrow account at First Alabama Bank. Reverend McKinney recalled one occasion when he signed five or six blank checks at appellant's request (R. p. 197). Reverend McKinney did not remember signing any check made payable to appellant for $3,000.00, nor could he remember signing checks payable to a local furniture store. When Reverend McKinney was shown checks with his name on them, used to pay appellant's apartment *Page 698 
rent, automobile installment payments, and other personal expenses, he denied the signatures on the checks, saying they were forged.
John Wright, appellant's landlord, identified a check payable to him and endorsed by him used by appellant to pay the rent on appellant's personal residence. When Mr. Wright questioned appellant about the account on which the check was drawn, appellant responded that he was organizing a bank and that this check was for his living expenses (R. p. 208). At the conclusion of Mr. Wright's testimony, the State rested its case.
Outside the presence of the jury, the defense moved to exclude the State's evidence and requested a directed verdict for the defendant. The trial judge heard argument from both sides on the motions. Subsequently, the motions were denied, and the jury was returned to the courtroom to hear evidence for the defense.
Sam Cook, a member of the Board of United Progressors, Incorporated, testified that he was involved with the introduction to the rest of the Board, in late 1976, of one Mrs. Moore, a prospective investor in the United Memorial National Bank, who was interested in purchasing the remaining unsold stock. At the time of Mrs. Moore's initial contact with the Board, stock sales had decreased substantially. The prospect of Mrs. Moore's investment had the effect of removing the incentive for the Board members to solicit any further stock subscriptions. Thus, virtually no stock was sold after this time, and the appellant was authorized by the Board to pursue the possibility of securing Mrs. Moore's investment.
Following Mr. Cook's testimony, the defense rested its case. Thereafter, the trial judge delivered his oral charge to the jury.
 I
Appellant contends that error to reversal occurred when the trial judge admitted into evidence items seized during the execution of a search warrant on the premises of the office of United Progressors, Incorporated. The seized evidence was primarily documentary in nature, including cancelled checks, bank statements, business records, and correspondence, the property of United Progressors, Incorporated.
As stated in Brown v. United States, 411 U.S. 223, 229,93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973):
 ". . . [T]here is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure . . ."
See also, Cross v. State, Ala.Cr.App., 351 So.2d 698 (1977);Lewis v. State, Ala.Cr. App., 335 So.2d 426 (1976); Barbosa v.State, Ala.Cr.App., 331 So.2d 811 (1976).
Thus, we find no violation of appellant's rights under the Fourth Amendment to the United States Constitution by the trial judge's admission of said evidence and subsequent testimony pertaining thereto. The evidence in this case fails to meet the requirements of Brown, supra. Hence, appellant has no standing to challenge the legality of the search.
 II
Appellant argues that it was reversible error to admit into evidence a memorandum prepared by Alabama Securities Commission Examiner Richard Payne. From a careful reading of Mr. Payne's testimony, we are clear to the conclusion that the memorandum in question was admissible as a record of the witness' past recollection.
Mr. Payne's testimony establishes that he prepared the memorandum in the form of a list of all the information on all the checks drawn on the escrow account and on the account of United Progressors, Incorporated. Mr. Payne stated that he recalled when he made the memorandum, *Page 699 
and that it was accurate at the time it was made. Finally, the witness testified that without the memorandum he would have no independent recollection of the information contained therein (R. p. 182). Such testimony satisfies the requirements for admission of a record of the witness' past recollection.Franklin v. State, 38 Ala. App. 274, 82 So.2d 316 (1955); Gamble, McElroy's Alabama Evidence, § 116.03 (3rd Ed., 1977), and authorities therein cited.
 III
Appellant argues that during the following colloquy the trial judge erroneously admitted inadmissible hearsay evidence (R. p. 179):
 "Q. Have you had personal contact with each of the persons named on this check, Mr. Payne? [Ruth Barber, James Harris, A. Boykins, Jr., Ben Davis, Jason Overby]
"A. Either in person or by telephone, yes.
 "Q. Have you found that any of these people have received any money back?
 "MR. COLLIER: Your Honor, that would call for a hearsay answer.
"THE COURT: Overruled.
 "A. They have all advised me that they have not received any refunds whatsoever."
The record reveals that James Harris, A. Boykins, Jr., Ben Davis and Jason Overby testified that they had received no refunds. Furthermore, these witnesses were subject to extensive cross and re-cross examination by appellant's counsel. Hearsay does not include statements of witnesses in the present trial subject to cross examination by the party against whom the statements are offered. Gamble, McElroy's Alabama Evidence, § 242.01 (1) (3rd Ed., 1977), and authorities therein cited.
 IV
Appellant argues that the trial judge erred to reversal in overruling motions to dismiss the indictment, exclude the State's evidence and the motion for directed verdict. Appellant submits that the indictment does not allege, and the State's proof does not show, that the conversion of funds was connected with the sale of stock. The indictment in this case tracks the language of § 8-6-17, Code of Alabama 1975. It reads as follows (R. p. 236):
 "Tyrone P. Gray, alias Tyrone Gray, whose name is otherwise unknown to the Grand Jury did, willfully and unlawfully, in connection with the offer, sale or purchase of a security, to-wit: capital stock issued by the United Memorial National Bank (hereinafter referred to as `said stock'), In Organization, directly or indirectly, (1) employ a device, scheme or artifice to defraud or (2) engage in an act, practice, or course of business which operated or would have operated as a fraud or deceit upon a person, as follows, to-wit: that said Tyrone P. Gray willfully and unlawfully converted to his own personal use monies paid for the purchase of said stock by securities purchasers, to-wit: James V. Harris, Abe Boykins, Jr., Jason B. Overby, Arnold W. Kidd, Walter Berry, Ruth Barber, Ben Davis, and Joyce M. Blackburn, to-wit: $9,750."
The first part of appellant's contention is rebutted by the language of the indictment ". . . in connection with. . . ." The form of the indictment was proper. Manson v. State, Ala.Cr.App., 349 So.2d 67 (1977).
The second part of appellant's contention is rebutted by a careful examination of the evidence presented by the State. The testimony at trial showed that appellant was in charge of depositing investors' funds in the escrow account. The proof showed that appellant commingled investors' funds with funds to be used for the operating expenses of United Progressors, Incorporated. Without Board authorization, appellant used the funds in the operating expense account at Central Bank for his own personal expenses. Moreover, investors' demands for refunds were not met and, in some cases, their inquiries went unanswered.
This Court finds that the evidence in this case was sufficient to support the jury's verdict. Appellant's actions and transactions *Page 700 
continued over a substantial period during which time numerous sales of stock were consummated. In the language of the statute, the proof was sufficient to show appellant "employed a device, scheme, or artifice, to defraud," or that he "engaged in an act, practice, or course of business which operated as a fraud or deceit."
After careful review of the record in this case, we find same to be free of error. We note special approval of the principles of restitution embodied in the trial judge's conditional suspension of sentence. This case is due to be and is hereby
AFFIRMED.
All the Judges concur.