John Rickey Reeves was indicted for the first degree kidnapping of one Clara Blackwell, in violation of § 13A-6-43, Code of Alabama 1975. The appellant plead "not guilty and not guilty by reason of insanity" to the charge, and trial was commenced in the cause. The jury found the appellant "guilty as charged in the indictment," and, after a sentencing hearing, the trial court fixed punishment at life imprisonment without benefit of parole, pursuant to the Alabama Habitual Felony Offender Statute.
The sufficiency of the evidence is not raised on appeal, therefore, we will limit our discussion of the facts to those which *Page 1158 
are necessary for a discussion of the issues raised as error.
 I
The appellant contends that the trial court erred in overruling his objection to testimony of one Denise Blackwell. During the course of the trial, Miss Blackwell, daughter of the victim, testified to a conversation she heard between the victim and the appellant. The appellant contends that such testimony was hearsay and, therefore, not admissible.
The following exchange occurred during the direct examination of Denise Blackwell, and serves as the basis of the appellant's argument: (R. 55-59)
 "Q All right. Tell us what, if anything, happened next.
 "A He shoved me into the bedroom, and he still had his hand around my neck so I couldn't — so I couldn't move. And I grabbed a strongbox that my dad keeps insurance policies in, and there was some jewelry and stuff in it. And he said, `That is enough.' And he said, `Can you drive?' And I said, `Yes.' So he grabbed me and shoved me out through the den and outside on the driveway. And I forgot there was no car there. And so then he shoved me back into the house.
"Q All right. He shoved you back into the house?
"A Yes, sir.
 "Q All right. What, if anything, occurred after he shoved you back into the house, did he continue to look for money or anything at that time?
"A No.
 "Q All right. Did he remain in the house with you at that point?
"A Yes.
 "Q All right. Did anyone arrive at the house shortly after you and he went back into the house?
"A Yes.
"Q All right. Who, if anyone, arrived.
"A Mother.
"Q Was anyone with her?
"A My little brother.
 "Q All right. Your mother, Clara, and your brother, Walter, arrived shortly after he took you back into the house?
"A Yes.
 "Q All right. Now, what, if anything, was said or done upon their arrival at the house?
 "A I couldn't see because I had a rug over my face, and I heard her come in the door, and I heard him walk out the door. And she asked him what he was doing here, and he grabbed her and —
 "MR. POWELL: Judge, we are going to object to this narrative type of testimony and also she is testifying to hearsay testimony about what her mother said and what someone outside of her presence said. She said she had a rug over her face.
 "THE COURT: Well, let me say this for the record so we will clarify matters to some extent. In the opening statement counsel for the defendant said, `We freely admit that the defendant abducted and kidnapped the victim.' And he said, `We don't disagree all that much with what the state has to say as concerns this case. We rest our defense on insanity.' "Now, that binds the defendant, admission of counsel does, and basically the only issue we are trying here is the question of insanity. So I am not going to be so greatly concerned with rulings that go over the conduct of the parties as they come forth other than as they might reflect on the question of insanity or insanity of your client.
 "There is no insanity in the record at this juncture, of course, and the defendant couldn't offer testimony, but insofar as the latter might be connected up, then I will allow it and I will base most of my rulings accordingly so that you won't be confused by any of them. That is the reason I am telling you this.
"Go ahead with your examination.
 "Q (By Mr. Moebes) All right. You can go ahead and tell what happened and what was said at that point when your *Page 1159 
mother and your brother came in and you had a rug over your face.
 "A I could not see him, but I could hear what was being said. And she said, `What are you doing here?' And he said, `Shut up, bitch.' And I just heard a scuffle. And he asked her where the money was. And she said, `In the bank.' And I don't really remember anything after that until he picked up — he picked me up and shoved me out of the house. All I heard was a conversation.
 "Q All right. When he shoved you out of the house, did anyone go with the two of you?
"A My mom.
"Q He took both of you out of the house?
"A Yes, sir.
 "Q All right. Could you see your brother, Walter, at the time the two of you were carried out of the house?
"A No, sir.
"Q Do you know where he was?
"A No, sir.
 "Q Now, were you able to get a good look at this man's face?
"A Yes, sir.
"Q Would you recognize him again if you saw him?
"A Yes, sir.
"Q Is that man present here in court today?
"A Yes, sir.
 "Q Would you point him out to the ladies and gentlemen of the jury, please. A (Witness pointing.)
"Q Which one are you pointing to, Denise?
"A The one in the middle of the two men.
"Q The one with the brown stripped (sic) shirt on?
"A Yes, sir.
 "Q Let the record reflect that the witness had pointed to the defendant, John Rickey Reeves. All right. After the defendant took you and your mother out the front door, what, if anything, did — was done at that point?
 "A He shoved me in the car first through the driver's side and told me — instructed me to get in the floorboard of the passenger's side of the car, and then he shoved my mother in next to me. She was on the seat. I was in the floor and —
"Q Is this in the front seat or the back seat?
"A The front seat."
The record reveals that the victim, Clara Blackwell, was present in court, testified as a witness against the appellant in the trial, and was subject to cross-examination by appellant's counsel. The record further reveals that the appellant was present at the time the statements were made, in fact, he was a party to the conversation. Hearsay does not include statements of witnesses in the present trial subject to cross-examination by the party against whom the statements are offered. Gray v. State, 364 So.2d 694 (Ala.Crim.App. 1978);Hammock v. State, 401 So.2d 292 (Ala.Crim.App. 1981); C. Gamble, McElroy's Alabama Evidence, § 242.01 (1) (3rd Ed. 1977). In the present case, such testimony was not hearsay and was admissible against the appellant.
Moreover, these statements were incident to what was done and shed light on the main facts of the case. Therefore, this testimony was further admissible as part of the res gestae of the offense. Allen v. State, 382 So.2d 1147 (Ala.Crim.App.), cert. denied, 382 So.2d 1158 (Ala. 1980); Williams v. State,389 So.2d 151 (Ala.Crim.App.), cert. denied, 389 So.2d 154
(Ala. 1980); Bass v. State, 375 So.2d 540 (Ala.Crim.App. 1979).
 II
The appellant contends that the trial court erred to reversal by allowing the State to elicit testimony from two physicians that, when the appellant was hospitalized in August of 1981, he was due to stand trial for an offense, and when his case was continued he checked himself out of the hospital. The appellant argues that such *Page 1160 
evidence of prior crimes was inadmissible, and as a result he should be granted a new trial.
 (A)
During the cross-examination of the appellant's witness, Dr. Conley Duncan, the following occurred: (R. 188-89)
 "Q Did you know he was to appear in Morgan County Circuit Court for trial the week after — the week before you observed him?
"A No, I did not.
"MR. POWELL: Objection.
"THE COURT: Overruled.
"MR. MOEBES: That is all."
The appellant first argues that Dr. Duncan's testimony was inadmissible. Appellant objected to this testimony at trial, assigning no grounds for the objection. On appeal, he argues that such testimony was of a prior crime of the defendant and, thus, inadmissible.
It should be noted initially that an objection without specifying a single ground is not sufficient to place the trial court in error for overruling such objection. Wyrick v. State,409 So.2d 969 (Ala.Crim.App. 1981); Smoot v. State,381 So.2d 668 (Ala.Crim.App. 1980); Gibbs v. State, 342 So.2d 448
(Ala.Crim.App. 1977); Langford v. State, 54 Ala. App. 659,312 So.2d 65 (1975).
Moreover, where a question is answered before an objection is made, the objection comes too late and the court's ruling will not be declared in error without a motion to exclude and an adverse ruling. Hooper v. State, 448 So.2d 501 (Ala.Crim.App. 1984); Thomas v. State, 440 So.2d 1216 (Ala.Crim.App. 1983);Hobbs v. State, 401 So.2d 276 (Ala.Crim.App. 1981).
 (B)
During the cross-examination of the appellant's witness, Dr. James Moody, the following occurred: (R. 197-198)
 "Q Were you aware when you saw him there on the last day of August, 1981 that he was to appear in court the next day to stand trial?
"A No.
"Q You didn't know that, did you?
"A No.
 "Q Did you know that after his case was continued for the term that he checked out of the hospital and left?
 "MR. POWELL: We object to that, Judge. That is irrelevant, it is prejudicial . . . It is prejudicing the jury against this defendant.
 "THE COURT: Well, if the witness can answer it, it may reflect on the defendant's conduct, and most of his conduct could have some relevancy on the issue before the Court.
"A Now what was the question.
 "THE COURT: I will overrule the objection, particularly since it is cross examination and this is an expert witness.
 "Q (By Mr. Moebes) Did you know that after his case in court was continued for the term that the defendant checked out of the hospital and left the hospital?
"A No.
"Q You didn't know that either, did you?
"A No, no."
The appellant argues that Dr. Moody's testimony was inadmissible. Appellant objected to this testimony at trial, assigning as grounds for the objection that such testimony was irrelevant and prejudicial. On appeal he argues that such testimony was of a prior crime of the defendant, and, thus, inadmissible.
We note initially that specific objections are necessary to preserve error. Wyrick v. State, supra; Gibbs v. State, supra. Further, it is well settled that all grounds of objection not specified are waived, and that the trial court will not be placed in error on grounds not raised at trial. Blackmon v.State, 449 So.2d 1264 (Ala.Crim.App. 1984); Hughes v. State,412 So.2d 296 (Ala.Crim.App. 1982); Wyrick v. State, supra;Beasley v. State, 408 So.2d 173 (Ala.Crim.App. 1981), cert. denied, 408 So.2d 180 (Ala. 1982); Bland v. State, *Page 1161 395 So.2d 164 (Ala.Crim.App. 1981); Knight v. State, 381 So.2d 680
(Ala.Crim.App. 1980); Hargrove v. State, 344 So.2d 823
(Ala.Crim.App.), cert. denied, 344 So.2d 826 (Ala. 1977); C. Gamble,McElroy's Alabama Evidence, § 426.01 (11) (3rd Ed. 1977).
Here there was no objection that the State was attempting to introduce evidence of a prior crime as is alleged by appellant. As a result, the appellant has failed to preserve this issue for review. Further, the objection was of a general nature, and as such not sufficient to preserve an issue for review. Potterv. State, 416 So.2d 773 (Ala.Crim.App. 1982); Wyrick v. State, supra; Lecroy v. Wiggins, 31 Ala. 13 (1857).
Moreover, "a negative response from a witness to questions relating to the accused's prior misconduct is harmless." Wyrickv. State, supra; Yates v. State, 390 So.2d 32 (Ala.Crim.App. 1980). A negative answer to an improper question does not constitute reversible error. Young v. State, 416 So.2d 1109
(Ala.Crim.App. 1982); Wyrick v. State, supra; Barton v. State,376 So.2d 756 (Ala.Crim.App.), cert. denied, 376 So.2d 761
(Ala. 1979); Scroggins v. State, 341 So.2d 967 (Ala.Crim.App. 1976), cert. denied, 341 So.2d 972 (Ala. 1977).
We have carefully reviewed the record for errors injurious to the appellant and find none therein.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.