562 So.2d 283 (1990)
Phillip GAY, alias
v.
STATE.
4 Div. 80.
Court of Criminal Appeals of Alabama.
February 23, 1990.
Rehearing Denied March 30, 1990.
*284 Richard Waldrop, Enterprise, for appellant.
Don Siegelman, Atty. Gen., and Andrew J. Segal, Asst. Atty. Gen., for appellee.
TYSON, Judge.
Phillip Gay was charged in two counts with robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975. A jury found the appellant "guilty of count one" and "not guilty of count two" of the indictment. The trial judge sentenced the appellant to life imprisonment without possibility of parole as a habitual felony offender.
On September 26, 1986, Jimmy Culverhouse was working at the Park Avenue Package Store in Enterprise, Alabama. Two black males entered the store. One of the men approached the counter. He gave Culverhouse some money to purchase an item. When Culverhouse turned to open the cash register, the other man approached Culverhouse from behind and placed a knife to his throat. He ordered Culverhouse to get on the floor. The two men then emptied the contents from the cash register and fled.
Several days later, Culverhouse was shown a photographic line-up. He selected the appellant's photograph as being one of the men who robbed him. Culverhouse testified, when asked if he saw the alleged robber in the courtroom, that the appellant "looked like" one of them. The jury returned *285 a verdict of not guilty as to this robbery.
On October 3, 1986, the Morgan Square Package Store in Enterprise, Alabama, was robbed. The modus operandi was very similar to the Park Avenue robbery. Two black males entered the store. After all of the customers had left, one of the men approached the counter and asked the clerk, Ed Ealey, about the prices to certain miscellaneous items, while the other perpetrator stood on the far side of the store. The male at the counter picked up a package of gum and paid Ealey. As Ealey turned to put the money in the cash register, the other robber came around the counter and placed a knife to Ealey's throat and ordered Ealey to get on the floor.
Ealey was later shown two photographic line-ups. He picked one individual out of both line-ups as being one of the robbers. He also identified this person, in court, as being the appellant. He picked a second individual out of the latter of the two line-ups. This person was identified to him to be Willie "Jap" Jackson.
During trial, Ealey testified that Jackson was the one who came to the counter to buy gum. The appellant was the robber who came around behind the counter, placed the knife to his throat and ordered him to get on the floor.
Ealey stated that the two men emptied the cash register and took his wallet. An inventory of the cash register revealed that $572 in United States currency was taken. His wallet contained approximately $600 in United States currency and various credit cards.
As the robbers were exiting the store, a couple pulled up in the front of the store and parked their car. Felicia Smith and Frederick Reed both identified this appellant as being one of the men who exited the store. They both noted that the only difference was that the appellant had a beard at the time of the robbery.
Cindy Dunaway, a detective with the Enterprise Police Department, investigated the robbery. When she arrived at the scene, she lifted several latent prints from the cash register and counter area.
These latent prints were sent to Carol Curly, with the Department of Public Safety, Alabama Bureau of Investigation, Latent Print Unit. Curly examined the latents and made two positive identifications. She compared the latents with the appellant's fingerprints and made a twelve-point match, nine points being the minimal standard.

I
The appellant contends that the trial judge's failure to grant a continuance so that he could make available two key witnesses violated his Sixth Amendment right to present witnesses in his favor. U.S. Const. amend VI.
On December 16, 1987, the appellant's counsel filed a motion to continue, seeking additional time to prepare for trial. The trial judge granted the motion and set the trial for February 8, 1988. The trial had previously been set for February 1, 1988.
On January 12, 1988, the appellant filed a motion to have the trial judge correspond with the Cook County, Illinois, court to have two witnesses, Sheryl Wilheit and Gary Watson, subpoenaed and ordered to appear in the Coffee County Circuit Court on the date of trial. Ala.Code § 12-21-180 et seq. (1975). According to the appellant, these two witnesses could testify that the appellant was in Chicago, Illinois, at the time of both robberies. The trial judge granted this motion on January 20, 1988, declaring both to be "material witnesses for the defense." (R. 31-32.) Furthermore, the trial judge approved State funds to insure the attendance of the two witnesses.
On February 2, 1988, the district attorney's office filed a notice of compliance, informing the trial judge that two checks, totalling $334.20 each, were sent to Cook County, Illinois. The witnesses were to appear before the Cook County judge on February 4, 1988, to receive those funds.
On Monday, February 8, 1988, the trial was set to begin. The appellant's counsel *286 informed the trial judge that the two witnesses from Chicago were not present. He asked that the two witnesses be made available before starting the trial. The district attorney urged the trial judge to allow the trial to proceed, stating that Wilheit had been tendered the funds on Friday, February 5, 1988. The trial judge agreed with the district attorney and informed both parties that he would reconsider the motion at the close of the State's evidence.
At the beginning of the second day of trial (Tuesday, February 9), the appellant's counsel informed the trial judge that the appellant spoke with Wilheit the previous evening. According to the appellant, Wilheit went to Troy, Alabama, by mistake, on Saturday, February 6, 1988. She then returned to Chicago, but told the appellant that she would be returning to Alabama the following day. The trial judge agreed to take the motion under advisement stating that they would continue with the trial to the extent possible, but most likely he would grant a one-day continuance. In this regard, the trial judge stated: "When a man's freedom for life is at stake, one day won't make that much different. If I'm assured that that witness is on the way, headed down here (sic)." (R. 8 Supp.)
The State then continued with its case. One of the witnesses who testified for the State was Amelia Granberry. She testified that she worked with the appellant in 1983 and 1984. She said that the appellant kept some of his items in her apartment after his trailer burned down. According to the witness, the appellant moved his belongings out of her apartment in August of 1986. She said she saw him on a couple of occasions after he moved out. She recalls talking to the appellant on Labor Day in September of 1986 and on October 6, 1986. On the latter date, she showed the appellant two composites of the robbery suspects, which appeared in the local newspaper. She asked the appellant if one of the composites was of him. He stated that it was not.
After Granberry testified, the State rested its case. At this time, the appellant advised the trial judge that the appellant's sister was served with a subpoena in Tuscaloosa, Alabama, but failed to appear for trial. The appellant's counsel also stated that a subpoena was issued for the appellant's mother, but she was not served because of a mistake in the address. The appellant's counsel stated, however, that he spoke with the appellant's mother by telephone. She told him that she could not come to the trial because she had to work. Furthermore, the appellant reminded the trial judge that Wilheit had not yet arrived from Chicago.
At the conclusion of his discussion, the time was 11:30 a.m. on Tuesday, February 9, 1988. The trial judge granted a continuance until 9:30 a.m. the next morning, so that the attendance of all necessary witnesses could be ascertained. That evening, a Coffee County Sheriff's unit was sent to Tuscaloosa, Alabama. The appellant's mother and sister were picked up and transported back to Enterprise.
The next morning, the appellant's counsel informed the trial judge that Watson had called him from Chicago and stated that he went to the Cook County, Illinois, courthouse to get his check. According to Watson, the sheriff's department would not let him enter the building because he was intoxicated. The district attorney responded that the witness was ordered to appear in court on February 4, 1988, but failed to do so.
At this juncture of the proceedings, the trial judge stated that he had "bent over backwards" to make sure all of the defense witnesses were made available, including sending the sheriff to Tuscaloosa and granting a one-week continuance to subpoena the two witnesses in Chicago. (R. 154.) He informed the appellant to present those witnesses who were available. The trial judge stated that he would reconsider the request to continue the trial further at the conclusion of his witnesses' testimony.
At the State's request, the appellant then made a proffer of evidence to show the materiality of these witnesses' testimony. The appellant, through counsel, stated that he lived with Watson during September and October of 1986. He saw Wilheit socially *287 during this same period of time. According to the appellant, both of these witnesses could substantiate his claim that he was not in Alabama during the time of the two robberies in Enterprise. The appellant also told the judge that his mother and sister would testify that, to their knowledge, the appellant was in Chicago during this time.
The trial judge again reiterated his numerous efforts to comply with the appellant's request to make various witnesses available. He also noted skepticism in the surrounding situations by stating as follows:
"THE COURT: ... I don't know whether this defendant has told these witnesses to make themselves not available. I don't know whether he has begged them to come down. I don't have anyway of knowing that. But, some things seem mighty strange to me at this point. It's amazing to me that this court would have to send after the momma [sic] of a defendant and a sister of the defendant. And, have them gotten by the sheriff and dragged down here to testify. If the defendant really wanted his witnesses hereit's questionable. Mighty questionable. Mighty mighty questionable. I continued this thing to allow you-all to get your witnesses. From last week, I continued it especially for this week to be tried. I continued it from yesterday to today, because I was under the impression that one witness was on her way down here on the bus, headed down here." (R. 165-66.)
The trial judge further found that the appellant had two witnesses in the nature of alibi witnesses, the appellant's mother and sister, who could testify that the appellant was not in Alabama.
After the appellant presented his two available witnesses, his mother and sister, the district attorney advised the trial judge that Bruce Devane, the Coffee County chief investigator for the district attorney's office, contacted the Cook County, Illinois, officials about Watson and Wilheit. The Cook County official told Devane that Watson was served with a subpoena by way of some one claiming to be his nephew. He also told Devane that Wilheit stated that she met the appellant only one time at a wedding and did not know why her presence was being requested.
The district attorney, thereby, requested the trial judge to continue the proceeding without further delay. The trial judge agreed, again noting his numerous efforts to make all witnesses available and refused to grant any further continuances.
The appellant, thereafter, rested his case. The jury was instructed as to the applicable law and returned a verdict of guilty of one count of robbery.
If this information was all that we had before us, resolution of this issue would be relatively simple. The problem is that, approximately fifteen minutes after the jury was dismissed, Sheryl Wilheit entered the courtroom. Wilheit took the stand to testify before the trial judge. She stated that she received the check for traveling expenses on the previous Friday, but she was unable to get it cashed until Monday (the day the trial started and the day she was ordered to appear in court). She stated that she spoke to the appellant on Monday evening. She told him that she was leaving Chicago the next morning (Tuesday) by bus. She told the judge that she could not leave on Monday because she had to make arrangements for her son. She denied that she had come to Alabama on Saturday and returned to Chicago as previously claimed by the appellant.
Wilheit testified that she saw the appellant on an almost daily basis during September and October of 1986. She also stated that she was presently six months pregnant with his child.
At the conclusion of her testimony, the appellant made a motion for a new trial, arguing Wilheit's testimony to be both relevant and material. The judge denied the motion.
On March 9, 1988, thirty days after conclusion of his trial, the appellant filed a written motion for a new trial. He alleged, inter alia, that the trial judge erred by refusing to grant a continuance to obtain the attendance of Wilheit and Watson.
*288 The decision to grant a continuance rests largely in the sound discretion of the trial judge. Since the trial judge is in a better position to make such a determination, his decision will not be overturned absent a clear abuse of that discretion. Ex parte Saranthus, 501 So.2d 1256, 1257 (Ala. 1986); Owens v. State, 460 So.2d 305, 313 (Ala.Cr.App.1984).
There are, however, some limitations on this discretion, such as where an accused's constitutional rights are in danger of being violated. This limitation was recently reiterated in Tolbert v. State, 552 So.2d 164 (Ala.Cr.App.1989), a case factually similar to the cause sub judice, where the appellant sought to obtain the presence of absent witnesses:
"Not every denial of a motion for continuance to obtain witnesses violates the accused's right to compulsory process. See, e.g., McKinney v. Wainwright, 488 F.2d 28 (5th Cir.), cert. denied, 416 U.S. 973, 94 S.Ct. 1998, 40 L.Ed.2d 562 (1974). A court may not, however, refuse to grant a reasonable continuance for the purpose of obtaining defense witnesses where it has been shown that the desired testimony would be relevant and material to the defense. Hicks v. Wainwright, 633 F.2d 1146 (5th Cir.1981); Singleton v. Lefkowitz, 583 F.2d 618 (2d Cir.1978). In Hicks, this court recently enunciated several factors which are to be considered in determining whether an accused was deprived of his right to compulsory process by a denial of a motion for continuance:
"`[T]he diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which the testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony. 633 F.2d at 1149 (quoting United States v. Uptain, 531 F.2d 1281, 1287 (5th Cir.1976) (footnotes omitted)).' Barton v. State, 494 So.2d 943, 949 (Ala.Crim.App.), cert. denied, (Ala.1986); Dickerson v. Alabama, 667 F.2d 1364, 1369-70 (11th Cir. 1982)."
See also Reeves v. State, 530 So.2d 894, 899 (Ala.Cr.App.1988) (testimony of missing witness was cumulative). Cf. Saranthus (finding error in trial judge's refusal to grant a continuance).
We have no doubt that the appellant's counsel made diligent efforts to contact the two witnesses from Chicago. Furthermore, his counsel explained fully and completely as to what he expected each witness to testifythat the appellant was in Chicago at and during the time of the two robberies in Enterprise, Alabama. This testimony obviously would prove favorable to this appellant if presented to the jury, and, arguably, it is somewhat unique. The appellant's mother and sister testified that the appellant told them that he was going to Chicago during this time.
On the other hand, the two witnesses from Chicago could physically place the appellant in Chicago at this time. Thus, the only remaining factor to consider is whether these witnesses' testimony could have been procured within a reasonable time. If so, the trial judge's refusal to grant a "reasonable continuance" would constitute reversible error. Hicks v. Wainwright.
Our review of the record reveals that the trial judge granted two continuances one for a week and another for a half day. Based on the facts and circumstances before the trial judge when he made his decisions, we find that these two continuances satisfied the "reasonable" time limit. The fact that the State presented overwhelming evidence that the appellant committed the October 3, 1986, robbery and the fact that the appellant was placed in Enterprise only three days after this robbery, coupled with the inability of the appellant to obtain any of the witnesses on the day that they were requested, including his mother and sister, clearly justify the trial judge's decision not to grant any further continuances. Moreover, the Chicago witnesses' testimony was to some extent cumulative of the mother and sister.
*289 Thus, we find no abuse of the trial judge's discretion, nor do we find that the appellant's Sixth Amendment right to compulsory process was violated.

II
The appellant next alleges three errors in the trial judge's oral instructions to the jury. First, he contends that the trial judge erred by failing to instruct the petit jury on a lesser-included offense of robbery in the first degree, specifically robbery in the second degree.
Second, he alleges that certain portions of the trial judge's instructions were misleading and incorrect statements of the law. Finally, he claims that the trial judge committed reversible error by instructing the petit jury on the defense of alibi, where the evidence failed to support such a claim and where the appellant did not request such an instruction.

A
As to the appellant's argument regarding the lesser-included offense, the Alabama Supreme Court has previously resolved this issue. Ex parte Hannah, 527 So.2d 675, 677 (Ala.1988). In Hannah, the Court held that robbery in the second degree could be a lesser-included offense of robbery in the first degree where two or more persons participated in the crime. However, the appellant in Hannah was not entitled to the lesser-included charge because he was aware that his accomplice was armed with a deadly weapon at the time of the crime. See Ala.Code § 13A-2-23 (1975) (legal accountability for an accomplice's acts).
Further, in Hannah, the appellant presented evidence that he only intended to trick his victim into giving him money. The Court opined that he could thus be guilty of only robbery in the first degree or theft.
The facts in the present case are consistent with Hannah on this issue. Here, the facts indicated that the appellant and his accomplice entered the liquor store and accosted the store clerk. In fact, the clerk identified the appellant as the one who placed the knife to his throat and ordered him to get on the floor. The only defense presented by the appellant was that he did not commit the crime, claiming that he was in Chicago, Illinois.
Thus, on the authority of Hannah, the appellant was not entitled to a jury instruction on robbery in the second degree.

B
The appellant also challenges several portions of the trial judge's instructions to the jury. Our review of the record, however, fails to reveal a timely objection as to these instructions. The appellant only challenged the absence of the lesser-included offense and the presence of the alibi charge in the trial judge's instructions to the jury. Issues not raised at trial are deemed waived, Reeves v. State, 456 So.2d 1156, 1160 (Ala.Cr.App.1984), including the failure to object to the judge's instruction to the petit jury. A.R.Cr.P.Rule 14 (Temp.); Allen v. State, 414 So.2d 989, 992 (Ala.Cr.App.1981), aff'd, 414 So.2d 993 (Ala.1982).

C
With regard to the instructions to the jury, the appellant lastly claims that the trial judge erred by instructing the jury on the defense of alibi. His failure to cite any legal authority in support of this contention in his brief constitutes a waiver of this issue. A.R.A.P.Rule 28(a)(5); Vinzant v. State, 462 So.2d 1037 (Ala.Cr.App. 1984). Moreover, the evidence justified this charge.

III
The appellant was taken to the South Central Alabama Mental Health Center in January of 1986. Tests were given to the appellant to determine his intelligence quotient (I.Q.) and his personality traits. He was also interviewed by the examiner. The examiner filed a report with the court. She concluded her report as follows:
"This evaluation is suggestive of an individual functioning within the range of mild mental retardation. Significant *290 weaknesses include judgement for social situations, abstract thinking and attention to significant details in the environment. Mental status examination was not indicative of a psychosis or depression. It is the opinion of this examiner that, although Mr. Gay functions below average intellectually, he would be capable of understanding the consequences of his behavior and the current criminal proceedings with the assistance of his attorney." (R. 37.)
Based on the findings of this report, the appellant urged the trial judge to transfer the appellant to Taylor Hardin Secure Medical Facility in Tuscaloosa, Alabama. The trial judge denied the request.
The appellant now claims that his failure to grant the motion for further psychological examination was error. We disagree.
An accused does not have a constitutional guarantee to publicly-funded psychiatric evaluations of his own choosing. Nelson v. State, 511 So.2d 225, 237 (Ala.Cr. App.1986), aff'd, 511 So.2d 248 (Ala.1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). He is only entitled to such an evaluation when he claims insanity to be a "significant factor at trial." Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).
The decision to allow an indigent defendant access to public funds for psychological evaluation lies in the discretion of the trial judge. The trial judge has the opportunity to observe the accused firsthand and make a determination. Bailey v. State, 421 So.2d 1364, 1366-67 (Ala.Cr.App. 1982). Our review of his decision in this case reveals no abuse of that discretion.

IV
The appellant next contends that the Morgan Square Package Store clerk's, Ed Ealey's, in-court identification was tainted, because it was based on a highly suggestive, pretrial photographic line-up.
Our review of the record fails to reveal that this matter was raised at trial. We have stated previously that "all grounds of objection not specified are waived." Reeves, 456 So.2d at 1160. The trial judge will not be placed in error by this court on matters he was never given an opportunity to address.

V
Robbery in the first degree is set out at § 13A-8-41, Code of Alabama 1975, as follows:
"(a) A person commits the crime of robbery in the first degree if he violates section 13A-8-43 and he:
(1) Is armed with a deadly weapon or dangerous instrument; or
(2) Causes serious physical injury to another."
The appellant concedes in his brief that the State proved the necessary elements of § 13A-8-43, Code of Alabama 1975, but he alleges that the State failed to prove the appellant was armed with a deadly weapon or dangerous instrument. Neither did the State, according to the appellant, prove serious physical injury occurred during the robbery.
The State's case was not based on physical injury to anyone. Rather, Ealey testified that a black male came around behind the counter and put a knife to his throat. He identified the appellant as being the one who brandished the knife. Ealey described the knife as follows:
"A. It looked like a butcher knife, or a hunting knife, or something of that nature, the blade was six to seven inches in diameter. And I would say it was probably about eight or nine inches long." (R. 61.)
The testimony of Ealey was sufficient to present the possibility to the jury that the appellant committed the crime for which he was charged. This evidence, coupled with the other overwhelming evidence as presented by the Statei.e., two other positive identifications and a match on the appellant's fingerprints, supports the finding of the petit jury that the appellant committed the October 3, 1986, robbery of the Morgan Square Package Store. See Carroll v. State, 440 So.2d 1168, 1170-71 (Ala. Cr.App.1983).
*291 For the reasons herein stated, the decision of the trial court is due to be, and the same is hereby, affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, J., concurs in result only, with opinion.
TAYLOR, P.J., concurs specially, with opinion.
BOWEN, Judge, concurring in result only.
I concur only in the result reached by the majority for the following reasons:
In Part I of the opinion, the majority appears to place a great deal of emphasis on what occurred after the continuance was denied. In this case, the correctness of that denial should be judged by what was before the trial judge at the time of the denial and not by what occurred after that time. "[N]ormally, a reviewing court determines the correctness of a trial court's ruling `as of the time when it was made and according to what the record shows was before the lower court at that time.'" Henry v. State, 468 So.2d 896, 899 (Ala.Cr. App.1984), cert. denied, 468 So.2d 902 (Ala. 1985).
The guidelines a trial court should follow in determining whether or not to grant a continuance were set out in Ex parte Saranthus, 501 So.2d 1256, 1257 (Ala.1986):
"A motion for a continuance is addressed to the discretion of the court and the court's ruling on it will not be disturbed unless there is an abuse of discretion.... If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence."
Applying these guidelines to the action of the trial judge at the time the continuance was denied, I find no abuse of discretion.
In Part III of their opinion, the majority finds that the trial judge did not abuse his discretion in denying the defendant access to public funds for a psychological evaluation. This finding is not responsive to the defendant's motion that the trial be suspended and he be transferred to the Taylor Hardin Secure Medical Facility for further mental examination. The defendant was requesting a second examination and determination of his sanity at the time of the crime.
Due process requires that the State provide an indigent defendant with the assistance of a competent psychiatrist when his sanity will be a "significant factor" in his defense. Ake v. Oklahoma, 470 U.S. 68, 83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985). Under Ala.Code 1975, § 15-16-21, the trial court shall suspend a trial to inquire into the accused's sanity, when the trial court "shall have reasonable ground to doubt his sanity." The "significant factor" test of Ake and the "reasonable ground" test of § 15-16-21 are not equivalent and should not be confused.
The trial judge, after considering the defendant's motion, found "absolutely no reason for this Court to believe defendant is either insane or incompetent to stand trial." The record supports that finding.
For these reasons, I concur only in the result reached by the majority.
TAYLOR, Presiding Judge, concurring specially.
The circuit judge "bent over backwards" in this case to give the defendant an opportunity to prove an alibi defense, and was nowhere near an abuse of discretion. Many criminal cases commence with a motion for continuance to secure "missing" defense witnesses.