Eugene R. Canudo, J.
This is a motion to suppress evidence relating to the alleged larceny and unauthorized use of a Lincoln Continental and a Mercury Cougar. A rather unusual feature of this case is the fact that it involves a street arrest by a uniformed police officer who, at the time of the arrest, did not know the reason for it.
The facts related at the hearing, which involved an air-land chase at high speed through city streets, might have been drawn from a motion picture or television scenario. They are unusual in the context of police performance in a large city, but they provide an illuminating insight into an area of law enforcement that may have ever-increasing potential, in the future, at the hands of alert, specially trained police personnel.
Officer James Rowley testified that, while flying a police helicopter at about 500 feet above a wooded, marshy area of *436 Brooklyn known as Gerritsen Beach Park on the afternoon of November 29, 1975, he became suspicious at the sight of the two cars, standing back-to-back at a close distance from each other, in a spot about 300 yards from the nearest road. There had been nothing at that location when he had flown over it a half-hour before. He descended to get a closer look, and when he was about 10 or 15 feet above them saw two males proceeding from the Continental to the Cougar. One was rolling a tire, which he placed inside the Cougar. Both then entered the car. The officer also observed that the Continental had no tires.
With the helicopter directly overhead, the Cougar burst forward. Rowley gave chase. When the Cougar reached the road its speed was increased, and it rolled for a good distance through Brooklyn streets at a rate of speed that reached 90 miles an hour. The helicopter, according to Rowley, was never more than 100 feet behind the car. At times during the chase it even crossed above and in front of the path of the automobile. The Cougar hit several other cars without stopping, and after the last such collision, at Linden Boulevard, it slid a considerable distance before coming to a halt. At this point Rowley saw two persons leave it. Observing the presence of uniformed police officers at the scene, he returned to Gerritsen Beach Park, where he landed and inspected the Lincoln. He found that the tires and some other parts of that car had been removed, and observed that the trunk lid had been left open. He then returned the helicopter to its base at Floyd Bennett Field and proceeded, by other means, to the 75th Precinct.
Police Officer Charles Molinet happened to be in a radio motor patrol car about 25 feet from the spot where the Cougar came to a halt. He had no information about the incident, but had seen the car approaching on Linden Boulevard at a great rate of speed, with the helicopter close above it. He saw the Cougar hit a car and slide some 500 feet before stopping, and then saw two men get out on the driver’s side and run away from it. With this, the defendant, Colorado Galloway, stepped out of the passenger side. He had taken no more than five steps when he was stopped and handcuffed by Molinet, who testified at the hearing that he had done this "for investigative purposes.” When asked on cross-examination what he was investigating, the officer replied, "I had no idea.”
Galloway was taken to the 75th Precinct, where the helicop *437 ter officer subsequently arrived, recited the Miranda rights to him, and questioned him. He admitted that he had been a passenger in both the Cougar and the Continental.
Investigation revealed that both cars had been stolen. The Continental had been stripped of its tires, radio, tape deck and ignition. Three tires were in plain view inside the Cougar, as well as a car radio, a tape deck and a "slapper” which had an automobile ignition attached to it.
Once the defendant was stopped and handcuffed, his freedom of movement, obviously, was effectively restrained. Whether legally or illegally, Galloway was in custody at that point. Legal custody exists, according to subdivision 2 of section 205.00 of the Penal Law, when the restraint is by a public servant pursuant to an authorized arrest or an order of a court. The defendant was, then, under arrest (People v Earl, 40 NY2d 941). If the arrest was unlawful, it was in violation of his Fourth Amendment rights (see People v Cantor, 36 NY2d 106), in which event the subsequent admission and the facts learned upon investigation would be tainted and inadmissible as "fruit of the poisoned tree” (Brown v Illinois, 422 US 590; People v Butterly, 25 NY2d 159; People v Dunaway, 38 NY2d 812). If the arrest was legal, such evidence will be admissible.
The key question, then, is whether Officer Molinet, with no knowledge of the facts preceding the startling event which he had witnessed, had reasonable cause to believe that a crime was being or had been committed (CPL 140.10, subd 1).
"To be alert, aware and knowledgable of street events,” said the court in People v Rosemond (26 NY2d 101, 104), "would seem the fundamental test of competent and skillful police work * * * The police can and should find out about unusual situations they see, as well as suspicious ones.” The officer’s obligation to interest himself in the situation that developed before his eyes is quite clear.
People v Qualls (29 NY2d 569) was a case in which, late one evening, four occupants of an automobile suddenly ran from the car upon the approach of a foot patrol officer. It was held that the officer, who because of this sudden occurrence believed that the car might have been stolen, had a right to chase and apprehend the fleeing occupants. In response to the defendant’s argument that mere flight in the late evening did not, in itself, constitute probable cause to arrest and search, *438 the court found that the flight, under those circumstances, did spell out probable cause to make the arrest.
Probable cause has been described as the sum total of layers of information and the synthesis of what the police have heard, what they know and what they have observed as trained officers (People v Tolentino, 40 AD2d 596; People v Calder, 44 AD2d 683). Suspicious or equivocal behavior alone will not justify an arrest, nor may police officers seize an individual, either physically or constructively, without some articulable justification (People v De Bour, 40 NY2d 210; People v Cantor, 36 NY2d 106; Terry v Ohio, 392 US 1; People v Ingle, 36 NY2d 413).
Officer Molinet, in the performance of his police duties, was made forcefully aware of an extraordinary occurrence that commanded his prompt, official attention. The reckless management of the Cougar and the presence of the helicopter in obvious pursuit certainly gave reason for suspicion and inquiry. Added to that was the attempt of some of the car’s occupants to get away from the scene. This gave evidence of a consciousness of guilt, sufficient to ripen that suspicion into reasonable cause and justify apprehension of the one participant who was within the officer’s grasp. Although flight from the scene of an accident, itself a crime, gave sufficient cause to arrest those who were seeking to escape, there is nothing in the evidence to show what Galloway’s intentions were in that regard. To be sure, he had had no opportunity to make his intentions known. Yet, Molinet was constrained to act speedily. He did so.
This was not a street situation, like so many we have seen, where a solution could be found by a simple on-the-spot inquiry. The officer could not, at the moment the Cougar stopped, be expected to surmise all that had happened. However, the totality of the circumstances was such that detention of Galloway was absolutely essential — even though Molinet "had no idea” of just what he was investigating — pending arrival of the information that would explain and clarify what he had witnessed. He could hardly have been expected, under the circumstances, to wait and see what Galloway would do and then decide to act, risking the chance that he might lose him.
Since the detention of the defendant on the street, for what might turn out to be a considerable period of time, might have led to the gathering of onlookers and the possible tensions *439 that frequently accompany such events, the officer acted prudently in removing him to the police station. In due time, explanation and clarification did come, under properly secure conditions.
There was probable cause for the arrest of Galloway. His statement to the officer, after he had been advised of his rights, and the facts established upon investigation are therefore admissible in evidence.
For the reasons stated above, the motion to suppress this evidence is in all respects denied.