The appellant was convicted for the robbery of a drug store and punishment was fixed by the jury at ten years in the state penitentiary. This appeal concerns the legality of a warrantless search of appellant's tool box on his pickup truck. Incriminating evidence was seized during the warrantless search and was introduced by the state over objection. We hold that the search was illegal within the parameters of the Fourth Amendment protection and that appellant's cause must be reversed and remanded for a new trial.
Larry Frank Doss, the state's first witness, testified that he was the owner of Doss Drugs in Morris, Alabama, and that at approximately 10:45 a.m. on April 1, 1976, the appellant came into his store and walked directly to the prescription counter. "He pulled back his jacket and took out a weapon and told me it was a holdup." A second individual then came in the drug store and walked over to the cash register where Mr. Doss' wife was standing. He, too, had a weapon.
The appellant then told Mr. Doss he wanted the narcotics, that "if I tried to set off any alarms or make any quick moves that I could be shot." Mr. Doss stated that he got the drugs for him, "some 50 milligram seconal capsules, some mepergan fortis capsules, some qualude tablets, some phenobarbital injections and some phenergan injection." These drugs were placed in a cardboard box and carried out along with approximately two hundred dollars cash from the cash register. After the narcotics and cash were taken, Mr. and Mrs. Doss were instructed to lie on the floor and not get up until the robbers were gone.
Mr. Doss testified that as he heard the car pull away he went to the door and tried to get a license number, but that the car was too far away. He did observe that the car was "gold or copper colored" and had what appeared to be a "leopard skin vinyl roof." Mr. Doss had seen the same automobile in front of the store immediately before the appellant entered the store. The get away car was headed in a southerly direction toward the point where Old Highway 31 intersects new Highway 31. Mr. Doss stated that he then called the Morris Police Department. The Kimberly Police arrived within five minutes, followed by the Morris Police and Jefferson County Sheriff's Department. Mr. Doss gave a description of the two robbers to the police.
Without question, the eyewitness testimony of Mr. Doss alone would have been sufficient to support the appellant's conviction for robbery. See Williams v. State, *Page 204 367 So.2d 990 (Ala.Cr.App.); Arnold v. State, 348 So.2d 1092
(Ala.Cr.App.), cert. denied, 348 So.2d 1097 (Ala. 1977). Each element necessary to support a robbery conviction was established. Gissendanner v. State, 338 So.2d 1025
(Ala.Cr.App.), cert. denied, 338 So.2d 1028 (Ala. 1976); Tarverv. State, 53 Ala. App. 661, 303 So.2d 161 (1974).
However, the state did not rest at the conclusion of Mr. Doss' testimony, but proceeded to introduce the fruits of the robbery which the police subsequently recovered. The following evidence is pertinent to the illegal search of the appellant's tool box on his pickup truck which resulted in the seizure of contraband taken in the robbery. It is the introduction into evidence of this contraband which mandates a reversal of this cause.
James Nash testified he was a superintendent for the Pawnee Mining and Coal Service and was working in Morris the day of the robbery. He was working on a cut-off road straight across from where old Highway 31 intersects new Highway 31. Mr. Nash had seen a "green pickup truck with a DT tag" travel the cut-off road just prior to seeing some Jefferson County Sheriff's vehicles on the road. The truck also had a tool box on it and a CB antenna on the top of it. Mr. Nash had earlier seen the green pickup parked in a driveway along the cut-off road facing old Highway 31. The DT tag on the pickup was red and white and the tool box, which was sitting against the cab, was white. As Mr. Nash drove back down the road he noticed a "gold car" with a "checkered top" parked in the driveway where the green pickup had been. He later saw several county vehicles and police officers at the scene of the gold car. Mr. Nash stopped and had a conversation with the officers.
Sergeant George R. Munkus of the Jefferson County Sheriff's Department testified that on April 1, 1976, he received a radio broadcast concerning a robbery at Doss Drugs in Morris. He was working in the detective division, plain clothes, in the Center Point area. Sergeant Munkus stated that he proceeded toward Morris looking for a "copper or brown Cougar automobile", but received a radio description while in transit of a "green Ford pickup with red and white license plates with the letters DT." Sergeant Munkus testified that he turned around and subsequently located the pickup truck at approximately 11:30 a.m. in front of apartment 119-F, Center Crest Apartments in Center Point. He just had "a hunch" that appellant would be "staying in that area." Sergeant Munkus placed the vehicle under surveillance and called headquarters for backup units.
Sergeant Munkus testified, on voir dire and during his examination in chief, that from his surveillance position he observed three subjects, including the appellant, come out of apartment 119-F and one of the subjects move a '57 Chevrolet station wagon across the parking lot. The three subjects returned to the apartment and approximately three minutes later came out together a second time. This time one of the subjects proceeded to leave the apartment in the '57 station wagon. Sergeant Munkus next saw the appellant place "something" in the tool box of the green pickup truck. The appellant and the other subject then proceeded to leave in a pink Thunderbird. As the two vehicles left the apartment parking lot, "I radioed the patrol unit to stop these people and question them and bring them back around to the apartment."
Officer David Webster of the Jefferson County Sheriff's Department testified on voir dire that five to seven patrol cars had formed a blockade near the exit to the Center Crest Apartments and that approximately ten deputies were there when the three subjects were stopped as they were leaving.
Sergeant Munkus admitted that the three subjects were "in the custody" of the deputies when they were brought back around to the apartment, that the focus of investigation had "centered in on them." "I went over there and identified myself and told them I was investigating a robbery of a drug store and asked for identification." The three subjects were identified as the appellant, and Jimmy and Joseph Carlisle. *Page 205 
"Q What happened at that point?
 "A I asked who owned the truck and Mr. Reid said he did. Green Ford pickup."
* * * * * *
"Q Did you ask Mr. Reid any other questions?
"A I asked him what he had placed in the tool box.
"Q What was his reply?
"A He said he had placed a box in the tool box.
"Q What happened at that point?
 "A I said, `what was in the box?', and he did not reply.
"Q Didn't say anything?
"A Did not."
The tool box was then unlocked. The evidence is controverted as to who actually unlocked the tool box, Sergeant Munkus or the appellant; however, Sergeant Munkus admitted that he raised the lid on the tool box.
 "Q Was anyone there at the scene besides yourself, Allen Reid, Jimmy and Joseph Carlisle when you opened that box?
 "A Sergeant Butler was there I know. There were numerous deputy sheriffs there."
* * * * * *
"Q What happened at that point?
 "A I looked in the tool box and observed a brown bottle, appeared to have assorted tablets and pills in it, and also a brown cardboard box.
"Q What happened then?
 "A I advised the subjects they were under arrest for investigation for robbery."
* * * * * *
"Q You actually arrested them for robbery then?
 "A Investigation and charge of robbery and placed them under arrest, gave them their rights and handcuffed them at that time.
 "Q So, you made an arrest incident to a search, is that correct?
"A After the search, yes, sir."
We find it unnecessary to recite further facts regarding the search of appellant's tool box. Suffice it to say that no warrant was obtained for this search, and, that the cardboard box containing the bottle of pills and tablets taken from Doss Drugs, state's exhibit 1, was subsequently admitted over objection.
At trial, during the hearing on the motion to suppress the illegally seized evidence, the state argued that the appellant gave the officers "implied consent" to conduct the search. On appeal the state, in addition, argues there were exigent circumstances, viz; the inherent mobility of the appellant's truck, which justified the warrantless search. Under the facts and circumstances of this case we hold that these arguments are not valid.
 I
Warrantless searches are per se unreasonable under the Fourth and Fourteenth Amendments subject to only a few "specifically established and well-delineated exceptions." Katz v. UnitedStates, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576,585 (1967); Herriott v. State, 337 So.2d 165, 168 (Ala.Cr.App.) cert. denied, 337 So.2d 171 (Ala. 1976).
Mr. Justice Bloodworth of our Supreme Court in the often cited opinion of Daniels v. State, 290 Ala. 316, 276 So.2d 441
(1973), enumerates the exceptions to the warrant requirement in the following language:
 "Notwithstanding the United States Supreme Court's assertion that its cases on the subject of the extent of a search which may be made without a warrant following a lawful arrest `cannot be satisfactorily reconciled,' it now seems to be fairly well established that there are at least six exceptions under which warrantless searches have been held valid, viz:
 "(1) In `plain view,' see Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971);
 "(2) With `consent' voluntarily, intelligently and knowingly given, see Bumper v. North Carolina, 391 U.S. 543, *Page 206 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) and Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938);
 "(3) As `incident to a lawful arrest,' see Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959);
 "(4) In `hot pursuit' or `emergency' situations, see Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947); State v. Sutton, (Mo. 1970) 454 S.W.2d 481;
 "(5) Where `exigent circumstances' exist coincidental with `probable cause' (as in the case of movables), see Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); and,
 "(6) In `stop and frisk' situations, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968)."
To this list we would add a seventh exception, the inventory search situation, see South Dakota v. Opperman, 428 U.S. 364,96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).
This court in Gass v. State, 372 So.2d 904, 907 (Ala.Cr.App. 1979) and in Herriott, supra, passed upon the issue of a consent search by pointing out the following:
 "In discussing the question of whether or not consent was voluntarily given, the Supreme Court of the United States, in Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, stated:
 "`. . . Rather it is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced. It is this careful sifting of the unique facts and circumstances of each case that is evidenced in our prior decisions involving consent searches.'
"In evaluating the circumstances surrounding the
 acquiescence to lawful authority, involved in a consent case, Judge Moylan of the Maryland Court of Special Appeals used the following language in Whitman v. State, 25 Md. App. 428, 336 A.2d 515: "`. . . The lesson articulated by Bumper and Schneckloth
in the area of search consents is that the individual subjected to the search may indeed be submitting
rather than consenting, even in an atmosphere of relative cordiality because of the presence of psychological forces as potent and effectual in achieving a "consent" as the traditional techniques and familiar instruments of physical "persuasion." We must, we find, be guided by the holding in Bumper
that a consent which is actually simple acquiescence to lawful authority is not voluntary and, when the defendant is in custody, by the concern expressed in Schneckloth that "in examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents."
 "`While each case must rest for decision upon its own facts and the "totality of the circumstances," an arrest without probable cause followed by custodial prodding for the arrestee's consent to a search, combined with police representations that the issuance of a warrant will be practically automatic-these are circumstances calculated only to persuade the individual that insistence upon Fourth Amendment guarantees will secure for him merely a delay of the inevitable search rather than the protection against unreasonable search and seizure to which he is constitutionally entitled. . . .'"
Mere submission to police authority will not suffice. Bumperv. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797
(1968); Gass, supra. Furthermore, consent to an otherwise illegal search must be clearly, unequivocally and convincingly proven. Lietz v. State, 291 Ala. 133, 279 So.2d 116 (1973). This burden rests on the prosecution. United States v. Smith,543 F.2d 1141 (5th Cir. 1976). Moreover, the law will not presume a waiver of a constitutional right from a silent record. Courts indulge every presumption against the waiver by an accused of his constitutional *Page 207 
right against unreasonable searches and seizures. Adair v.State, 53 Ala. App. 251, 298 So.2d 671 (1974). The state must prove that consent to search was evidenced by a statement or some overt act sufficient to indicate an intent to waive the constitutional right, and must prove that there was no duress or coercion, express or implied. Hardy v. State, 53 Ala. App. 75, 297 So.2d 399 (1974).
In considering the circumstances of the search of appellant's tool box, we can find no evidence that he consented to the search in any manner. The facts do not support the state's contention. Nothing more than submission to police authority is indicated. We hold that the state failed completely to meet its burden of proof in establishing a consent search.
We next consider whether exigent circumstances existed which could have justified the warrantless search. We hold there were none. Prior cases have tended to limit application of the exigent circumstances exception to situations which involve movables, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975,26 L.Ed.2d 419 (1970), and situations where the destruction of evidence is imminent if the search is not conducted immediately, Schmerber v. California, 384 U.S. 757,86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). See Golden v. State,361 So.2d 1128 (Ala.Cr.App.) cert. denied, 361 So.2d 1132 (Ala. 1978).
From the facts and circumstances in the instant case, it is clear that the police officers were not faced with a "now or never situation." The contraband was safely contained in the tool box of the appellant's truck which was under constant surveillance. The appellant was apprehended only as he was leaving the apartment complex with another individual in a pink Thunderbird. He was nowhere near his truck at that time. The appellant was escorted back to the apartment surrounded by approximately ten deputy sheriffs. He was "in custody." In short, at the time of the search, there was no danger in the pickup truck leaving the area or of the evidence contained in the tool box being destroyed. A search warrant clearly could have been and should have been obtained before the search was conducted.
Although not raised in the state's brief, we would also point out that the search cannot be justified as incident to a lawful arrest. Sergeant Munkus admitted that he made the arrest incident to the search. This was impermissible and not within the confines of Chimel v. California, 395 U.S. 752, 763,89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). A search cannot be made legal by what it turns up. Rudolph v. State, 371 So.2d 962
(Ala.Cr.App.) cert. denied 371 So.2d 965 (Ala. 1979).
We have considered the other exceptions to the warrant requirement and have found them inapplicable. We need not consider the sufficiency of the search warrant which was later obtained for the search of apartment 119-F as the contraband which was seized from appellant's tool box should have been suppressed. It cannot be said that the introduction of this evidence was harmless to appellant's cause or that his right to a fair trial was not prejudiced thereby. The emphasis placed by the state on the introduction of the illegally seized evidence was great. We know not what effect this had on the jury. Because of the several deficiencies, as herein pointed out, we have no alternative but to reverse and remand this cause for a new trial.
REVERSED AND REMANDED.
All the Judges concur. *Page 208