562 So.2d 639 (1989)
James L. McLEMORE, Jr.
v.
STATE.
3 Div. 16.
Court of Criminal Appeals of Alabama.
September 29, 1989.
Rehearing Denied November 17, 1989.
Certiorari Quashed April 20, 1990.
*640 Thomas M. Goggans, Montgomery, for appellant.
Don Siegelman, Atty. Gen., and Robert E. Lusk, Jr., Asst. Atty. Gen., for appellee.
Alabama Supreme Court 89-302 and 89-317.
BOWEN, Judge.
James L. McLemore, Jr., was charged in separate indictments with the offenses of burglary in the first degree, rape in the first degree, and sodomy in the first degree. The three cases involved the same victim and were consolidated for trial on McLemore's motion. After a jury found him guilty of all charges, McLemore was sentenced as a habitual offender to life imprisonment in each case. McLemore raises ten issues on this appeal from his convictions.
Around 1:30 a.m. on the morning of August 23, 1987, the victim, who was asleep on the sofa in her living room, was awakened by the sound of the wind chimes hanging in one of her interior doorways. She sat up and turned on a light. A black male wearing a shirt and shorts of multi-colored plaid, a white cap, and black shoes stepped out of the doorway. This man, whom she did not know, but identified in court as McLemore, had a knife in his hand and demanded money from her. She told him that she did not have any. He then ordered her to disrobe and forced her to have sexual intercourse with him. Afterwards, he forced her into her bedroom, where he again raped her and then forced her to perform oral sex. During the second rape, the victim began to bleed.
McLemore was arrested that evening (see Part IV below). Subsequently, a latent print lifted from the frame of a window screen at the victim's apartment was identified as McLemore's right thumbprint. A search warrant was obtained for the apartment where McLemore resided with his parents, two sisters, and a brother. A matching plaid shirt and shorts set was found in the bedroom occupied by McLemore, his sisters, and his brother. A pair of men's underwear with blood stains in the crotch area and a white cap were discovered in the laundry hamper. The victim identified the shirt, shorts, and cap as those worn by the intruder. The blood stains on the underwear were determined to be of vaginal origin and were consistent with the blood of the victim but "could not have come from McLemore."
McLemore's parents testified in his defense. Mrs. McLemore stated that the shirt and shorts set belonged to her other son, Lamar, and that everyone living in the apartment used the same laundry hamper. On cross-examination, however, she acknowledged that McLemore and his brother were comparable in size and that McLemore was wearing the shirt and shorts set on the day of the crime. Mrs. McLemore also stated that McLemore, his brother, and his father all wore the same size underwear. While she could not state to whom the blood stained underwear belonged, she maintained that they "look[ed] too big" for McLemore. On cross-examination, McLemore's father denied placing the blood-stained underwear in the laundry hamper. McLemore did not testify.

I
The trial court properly denied McLemore's motion for a new trial without a hearing. Aside from the usual assertions contained in motions for new trial, McLemore's motion alleged: "After trial, the undersigned counsel received information that the victim had a sister and that there is a suspicion that the sister appeared to the jury as the averred victim."
The motion was unverified and was not accompanied by any affidavits in support of this bare allegation. Therefore, McLemore was not due an evidentiary hearing. See Donahoo v. State, 505 So.2d 1067, 1075 (Ala.Cr.App.1986); Geter v. State, 468 So.2d 197, 198 (Ala.Cr.App.1985).
*641 It is interesting that, in support of his contention that he should have been granted an evidentiary hearing, McLemore has compared his motion to a petition for error coram nobis (now A.R.Crim.P. (Temp.) Rule 20 petition). This court has made it very clear that a petition for writ of error coram nobis should be based on affidavits attached thereto as the petition is "essentially a motion for new trial." Carroll v. State, 462 So.2d 789, 790 (Ala.Cr.App. 1984). Moreover, "[a] hearing [on a coram nobis petition] should not be granted without affidavits sufficiently refuting a record that appears correct." Stephens v. State, 420 So.2d 826, 828 (Ala.Cr.App.1982). See also Clency v. State, 442 So.2d 148, 149 (Ala.Cr. App.1983).
McLemore's reliance on Ex parte Foster, 548 So.2d 478 (Ala.1988), is also misplaced, as that case is factually distinguishable from the present case. In Foster, the defendant filed a pro se motion for new trial alleging the incompetency of trial counsel. We note that Foster's motion, unlike McLemore's motion, set forth specific facts in support of Foster's allegations. The trial judge denied Foster's motion by a written order in which he erroneously concluded that certain facts asserted in that motion "would not have been admissible in the case." 548 So.2d at 480. It was for this reason that the Alabama Supreme Court remanded the case for an evidentiary hearing. This is clearly a different situation from the case at bar.

II
McLemore asserts that a non-responsive answer by a witness for the State resulted in the erroneous admission of evidence of other crimes.
While eliciting the events surrounding McLemore's arrest for the instant offenses, the prosecutor asked the investigating officer: "Did you arrive out there [where McLemore was being detained by patrol officers]?" The officer replied: "Yes, we did. We arrived on the scene and found that the patrol had a black male, the defendant, James McLemore, Junior.... I went up to the subject and asked him for some identification and if he had any prior arrests or record or anything. And at that time he said." At this point, defense counsel objected and, outside of the jury's presence, requested the trial judge to instruct the jury to disregard the officer's question to McLemore. The trial judge sustained the objection, but refused to give the requested instructions to the jury, stating:
"I am not going to do that because then I am planting something in the jury's mind that is not there. The question wasI mean the answer was that we went over to talk with him and asked him about a prior record. He didn't say he had a prior record...." (Emphasis added.)
In general, evidence of other or collateral crimes committed by a defendant is not admissible at his trial for a specific offense. C. Gamble, McElroy's Alabama Evidence, § 69.01(1) (3d ed. 1977). Evidence which reveals that the defendant has been previously arrested for other offenses is considered to be inadmissible evidence of collateral crimes. See Ex parte Johnson, 507 So.2d 1351 (Ala.1986); Fuller v. State, 472 So.2d 452 (Ala.Cr.App.1985); Prince v. State, 420 So.2d 856 (Ala.Cr.App.1982). The investigator's nonresponsive answer in this case, however, did not, as the trial court noted, reveal that McLemore had been arrested for other offenses. Consequently, there was no violation of the general exclusionary rule noted above, and we find no error in the trial court's refusal to give the requested instructions. In such a case as this, the trial judge's exercise of discretion should be given every presumption of correctness.

III
McLemore contends that the evidence developed from his blood sample was inadmissible because the state failed to prove that his consent to the taking of the sample was voluntary. In concluding that the consent was voluntary, we fully recognize that a finding that McLemore's initial apprehension was improper may affect our holding. See Part IV.
*642 After McLemore's arrest on the evening of August 23, he was transported to police headquarters. Former Detective L.V. Moore testified at the pre-trial suppression hearing that, after taking photographs of McLemore and presenting a photographic lineup to the victim,
"we read the defendant his constitutional rights and began talking to him about he stated that he understood his rights and he did sign the rights form. We began talking to him about the rape. We asked him where he was at, questions, and he said he didn't know anything about it. We asked him would he be willing to give us a blood sample. He said yes he would, to clear his name. I thenwe had him sign a blood sample waiver form."
When asked by the prosecutor, "Did y'all use any coercion or force?," Moore responded, "Not at all. He stated he wanted to clear his name. We asked him would he give us blood, and he said he would, that he wanted to clear his name."
McLemore's testimony at the suppression hearing conflicted with Moore's. McLemore stated that Moore told him "You're going to give us some blood." When he responded negatively, Moore slapped him on the side of the head and tried to kick him in the groin while he was handcuffed to a chair. Moore's partner put a paper bag over his head and McLemore was hit several times on the head with a book. McLemore stated that he signed the consent form "[t]o stop them from hitting me across the head."
"`When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntary given.' Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); Schneckloth v. Bustamonte, 412 U.S. 218, [222,] 93 S.Ct. 2041, [2045,] 36 L.Ed.2d 854 (1973)." Murray v. State, 396 So.2d 125, 129 (Ala.Cr.App. 1980), cert. denied, 396 So.2d 132 (Ala.1981). In order to establish the voluntariness of a consent, the prosecutor must prove two distinct elements: (1) that the consent "was evidenced by a statement or some overt act sufficient to indicate an intent to waive the constitutional right," and (2) that "there was no duress or coercion, express or implied." Reid v. State, 388 So.2d 202, 207 (Ala.Cr.App.1979), reversed on other grounds, 388 So.2d 208 (Ala.1980). See also Hardy v. State, 53 Ala.App. 75, 78, 297 So.2d 399, 401-02 (1974). Both elements must be established by "clear and positive testimony." King v. State, 521 So.2d 1042, 1046 (Ala.Cr.App.1987), cert. denied, 521 So.2d 1050 (Ala.1988).
In the present case, there was sufficient testimony by Detective Moore to establish the voluntariness of McLemore's consent to the blood test. Where the evidence of voluntariness is conflicting, this Court must uphold the credibility choices made by the trial judge. Ex parte Singleton, 465 So.2d 443, 445 (Ala.1985); Williams v. State, 461 So.2d 834, 839 (Ala. Cr.App.1983), reversed on other grounds, Ex parte Williams, 461 So.2d 852 (Ala. 1984). "The evidence presented by the State is to be viewed in the most favorable light when deciding upon sufficiency of evidence." Ex parte Hinton, 548 So.2d 562 (Ala.1989).

IV
McLemore contends that certain evidence, such as the victim's identification of his voice and the fingerprint and blood comparisons, should have been suppressed as the fruits of an illegal warrantless arrest. This issue was first raised in McLemore's motion for new trial.
Around 7:00 or 8:00 p.m. on the evening of the crime, the victim left her apartment to walk several blocks to her mother's house. En route she encountered a number of people and observed police officers talking to someone. McLemore walked by her, and she informed the officers present that he was the intruder. Her identification of McLemore at this time, however, was not made with complete certainty. McLemore was detained by the officers present, and Detective Moore, the case officer, was summoned. Upon Moore's arrival, he questioned McLemore briefly. When *643 McLemore was unable to produce his "ex-felon" card after stating that he had recently been released from prison, Moore "placed him under arrest for failing to possess" such a card. See Ala.Code 1975 § 13A-11-180 et seq. After hearing McLemore answer Moore's questions, the victim was able to identify him with more certainty.
McLemore testified at the suppression hearing that he had been handcuffed by the patrol officers prior to Moore's arrival on the scene. There was no evidence offered by the state to refute this. The patrol officers who initially seized McLemore did not testify at either the suppression hearing or the trial. In fact, the record does not reveal the manner in which, or the reason for which, McLemore was initially seized.
An arrest occurs "when an individual's `freedom of movement' is curtailed. Foy v. State, 387 So.2d 321, 324 (Ala.Cr.App.1980); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)." State v. Butler, 461 So.2d 922, 925 (Ala.Cr.App.1984). At what point in time an arrest is accomplished is usually a question of fact. State v. Phillips, 517 So.2d 648, 650 (Ala.Cr.App. 1987).
"Generally and except in the most exceptional circumstances, a person must be considered under arrest once he has been handcuffed. People v. Calhoun, 73 A.D.2d 972, 424 N.Y.S.2d 247 (1980); People v. Galloway, 89 Misc.2d 435, 437, 391 N.Y.S.2d 798, 800 (Sup.Ct.1977); Commonwealth v. Roscioli, 240 Pa.Super. 135, 137, 361 A.2d 834, 835 (1976). The handcuffing of an individual without explanation amounts to a show of official authority such that `a reasonable person would have believed he was not free to leave.' United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)."
Bradley v. State, 494 So.2d 750, 759 (Ala. Cr.App.1985), affirmed, 494 So.2d 772 (Ala. 1986), cert. denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987). See also Clifton v. State, 501 So.2d 539, 541 (Ala.Cr. App.), cert. denied, 501 So.2d 541 (Ala. 1986). The dispositive question of when McLemore was actually arrested was not addressed in the circuit court.
Even though McLemore did question the legality of his arrest, at the pretrial suppression hearing and at trial, it appears that everyone assumed that the initial arrest occurred when McLemore was formally placed under arrest for his failure to produce his "ex-felon" card. Only in the motion for new trial is the contention presented that the actual arrest occurred earlier. Without a showing of the legality of McLemore's initial detention, this court is unable to determine the legality of his subsequent arrest which was based on information obtained by the police during that initial encounter. Cf. Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); Ex parte Meeks, 434 So.2d 844 (Ala.1983); Bradley, supra.
While the argument can be made that this specific issue was not adequately preserved by defense counsel, Fuller v. State, 365 So.2d 1010, 1012 (Ala.Cr.App.1978), cert. denied, Ex parte Fuller, 365 So.2d 1013 (Ala.1979), an equally valid contention exists that the State did not carry its burden of proving the reasonableness of a warrantless arrest. Youtz v. State, 494 So.2d 189, 193 (Ala.Cr.App.1986).
Under these circumstances, we think the most prudent course is to remand this cause to the trial court with instructions that an evidentiary hearing be conducted concerning McLemore's initial apprehension, detention, and subsequent formal arrest. Upon completion, a transcript of that hearing is to be forwarded to this court, along with the written findings of fact and conclusions of law of the trial court. If the trial court finds that the initial seizure was improper, it shall then determine what affect that impropriety had on the fruits of that detention or arrest and order whatever relief may be appropriate.

V
An "indictment must apprise the accused with reasonable certainty of the nature of the accusation against him, so that he may prepare his defense and plead the *644 judgment of conviction as a bar to any subsequent prosecution for the same offense. United States v. Simmons, 96 U.S. 360, 24 L.Ed. 819 (1877)." Wilder v. State, 401 So.2d 151, 160-61 (Ala.Cr.App.), cert. denied, 401 So.2d 167 (Ala.), cert. denied, 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981). McLemore asserts that the indictment filed against him in the first degree burglary case failed to meet this requirement.
The indictment in question provides, in pertinent part, that McLemore
"did knowingly and unlawfully enter or remain unlawfully in a dwelling of [the victim], with intent to commit a crime therein, to rape and/or sodomize, and in effecting entry or while in the dwelling or in immediate flight therefrom, said defendant or another participant in the crime was armed with explosives or a deadly weapon, a knife, in violation of Section 13A-7-5 of the Code of Alabama."
As this court has stated on several occasions:
"`[A]n indictment must state the facts constituting the offense, in ordinary and concise language, in such manner as to enable a person of common understanding to know what is intended. It must likewise inform the accused not only of the nature of the offense, but also of the particular act or means by which it was committed.'"
Jemison v. State, 513 So.2d 47, 48-49 (Ala. Cr.App.1987) (quoting Matthews v. State, 401 So.2d 241, 245 (Ala.Cr.App.), cert. denied, 401 So.2d 248 (Ala.1981)). The indictment in question was clearly sufficient to apprise McLemore of both the charge against him and the facts out of which that charge arose. In reviewing a very similar indictment (also charging first degree burglary) in Hardy v. State, 409 So.2d 996 (Ala.Cr.App.1982), this court held that the indictment "was proper in form and substance, being sufficient in and of itself to acquaint appellant with the crime charged, as well as with what he must be prepared to defend against." 409 So.2d at 1001. It follows that the indictment also contains sufficient information to enable McLemore to enter a plea of double jeopardy should he again be prosecuted for this offense. See also Minshew v. State, 542 So.2d 307, 312-13 (Ala.Cr.App.1988).
Furthermore, this indictment substantially tracks the language of Ala.Code 1975, § 13A-7-5(a)(1), which defines burglary in the first degree. "An indictment which follows the language of a statute is sufficient to apprise the appellant of the charges against him, and to allow him to prepare a defense." Copeland v. State, 455 So.2d 951, 956 (Ala.Cr.App.), cert. denied, 455 So.2d 956 (Ala.1984) (citations omitted) (quoted in Garrison v. State, 521 So.2d 997, 1001 (Ala.Cr.App.1986)).

VI
During the prosecutor's cross-examination of McLemore's mother, the following occurred:
"Q. Can you tell this jury how your son's fingerprints got on the window outside of [the victim's] apartment on the screen?
"[Defense Counsel]: Your Honor, we object to this. This calls for pure speculation. I think [the prosecutor] knows that.
"[Prosecutor]: I just want to know whether she knows.
"The Court: Overruled.
"A. I wasn't there."
Technically, the question called for a yes or no response regarding something within the knowledge of the witness, not speculation on her part. (She either could tell the jury how the fingerprints got on the screen or she could not.) In any event, "the latitude and extent of cross-examination is within the sound discretion of the trial judge and is not to be disturbed on appeal unless there is an abuse of discretion." Blackmon v. State, 449 So.2d 1264, 1266 (Ala.Cr.App.1984). Accord, Coburn v. State, 424 So.2d 665, 669 (Ala.Cr.App.1982); McFerrin v. State, 339 So.2d 127, 130 (Ala. Cr.App.1976). We find no abuse of discretion in this instance.

*645 VII
McLemore filed a pre-trial motion to produce in which he requested the results and reports of "any and all physical or scientific tests or experiments." See Rule 18.1(d), A.R.Crim.P. (Temp.). Although the trial court granted this motion, the prosecutor failed to provide the results of the fingerprint comparisons to McLemore prior to trial. Over McLemore's objection, the prosecutor was permitted to introduce at trial the results of these comparisons (i.e., that a print lifted at the crime scene had been identified as McLemore's). McLemore asserts that the admission of this evidence, which had not been provided to him as required by the discovery order, was reversible error.
In addressing precisely the same issue in Buchannon v. State, 554 So.2d 477 (Ala. Cr.App.1989), we stated:
"This court views the failure to comply with Rule 18 with particular disfavor and condemnation. However, we also recognize that a failure to comply with this rule does not always mandate reversal. Rule 18.5(a), A.R.Crim.P. (Temp.), provides:
"`If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection; grant a continuance if requested by the aggrieved party; prohibit the party from introducing the evidence not disclosed; or enter such other order as the court deems just under the circumstances.'
"This rule is virtually identical to Rule 16(d)(2), Fed.R.Crim.P., which clearly places the remedy for violations of discovery rules within the sound discretion of the trial court. United States v. Kubiak, 704 F.2d 1545 (11th Cir.), cert. denied 464 U.S. 852, 104 S.Ct. 163, 78 L.Ed.2d 149 (1983). See also McCrory v. State, 505 So.2d 1272 (Ala.Cr.App. 1986). `To support a claim for reversal of the exercise of that discretion, the accused must show prejudice to substantial rights.' United States v. Kidding, 560 F.2d 1303, 1313 (7th Cir.), cert. denied, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977) (quoted in United States v. Kubiak, supra, at 1552).
"Our Rule 18.5(a), like Federal Rule 16(d)(2), `does not require ... courts to exclude evidence not turned over to the discovering party in violation of a discovery order.' United States v. Bartle, 835 F.2d 646, 649 (6th Cir.1987). Instead, these rules provide `for a variety of remedies that optimally allow the admission of the probative evidence while insuring that the opposing party has adequate time to prepare for it. Among these remedies are the recess and the continuance.' Id., at 650. Where either a recess or continuance would have served to protect the defendant's interest, but neither was requested at trial, a defendant `is not in a position to fault the court for denying his motion to exclude.' Id.; accord, United States v. Kubiak, supra."
554 So.2d at 486.
McLemore, like the defendant in Buchannon, "requested only the most severe remedytotal exclusion of the [fingerprint] evidence," id. (although defense counsel candidly admitted at trial that "the defense was aware that there were fingerprints taken"). Under the circumstances presented here, as in Buchannon, it appears "that either a recess or continuance would have been sufficient to protect [McLemore's] interests and permit him to review and evaluate this particular evidence in the same manner as had he received this information prior to trial. Having failed to make any showing to the contrary and having failed to request either a continuance or recess, [McLemore] cannot claim error on the part of the trial court in denying his request to exclude the evidence. United States v. Bartle; United States v. Kubiak, supra." Id. Furthermore, there was abundant evidence of McLemore's guilt aside from the fingerprint comparison. Under the facts of this case, the trial court's refusal to exclude the fingerprint evidence did not result in any prejudice to McLemore's substantial rights.
*646 This court is aware that the Alabama Supreme Court has, in two cases, held that the prosecutor's failure to comply with a Rule 18 discovery order mandated a reversal. Ex parte Motley, 534 So.2d 564 (Ala. 1988); Ex parte Lambert, 519 So.2d 899 (Ala.1987). Both of these cases, however, involved the failure to provide extrajudicial statements of the defendant and apparently involved facts from which the Supreme Court concluded that a reversal was the only sanction which "would accomplish the goals of the discovery rules." McCrory v. State, 505 So.2d at 1279. We note that neither of those cases contained any discussion of the other sanctions for nondisclosure contained in Rule 18.5. We, therefore, find those cases distinguishable from the case at bar.
In Ex parte Brown, 548 So.2d 993 (Ala. 1989), our Supreme Court held: "[W]here defendant has timely requested the production of exculpatory evidence that is material to his defense and the trial judge has ordered that such evidence be produced, Brady [v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)], and Rule 18.1, A.R.Crim.P., require that the evidence be produced at a reasonable time before trial." That rule does not apply here because the evidence was not exculpatory.

VIII
McLemore asserts that the delay between his arrest and his subsequent indictment and trial deprived him of his Sixth Amendment right to a speedy trial. A chronological listing of the events pertinent to this issue follows:
August 23, 1987: The crime occurred in early morning hours. McLemore was arrested that evening and a blood sample was taken and a rape examination made thereafter.
August 27, 1987: A search warrant was executed at McLemore's residence.
October 2, 1987: A report was prepared by Alabama Department of Forensic Sciences personnel concerning McLemore's rape examination.
January 29, 1988: A report was prepared by Alabama Department of Forensic Sciences personnel concerning hair comparisons.
February 2, 1988: Letters were sent by Alabama Department of Forensic Sciences personnel to the Montgomery County District Attorney and the Montgomery Police Department concerning the rape examination and hair comparison reports.
March 3, 1988: McLemore filed demands for presentment to a grand jury and for a speedy trial.
March 7, 1988: The three indictments were returned against McLemore by a Montgomery County Grand Jury.
April 6, 1988: McLemore filed motions to dismiss the indictments on the grounds that his right to a speedy trial had been denied.
April 8, 1988: McLemore was arraigned on all three indictments.
May?, 1988: A hearing was held on various motions filed by McLemore, including the motions to dismiss the indictments.
May 9, 1988: The trial judge denied McLemore's motions to dismiss.
May 30-31, 1988: The consolidated cases were tried before a jury which convicted McLemore on all three charges.
A defendant's claim that he was denied his right to a speedy trial is to be reviewed by the standards set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). This review is actually "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." 407 U.S. at 530, 92 S.Ct. at 2191-92. In performing this "balancing test," a court is to assess the following factors: (1) the length of the delay, (2) the defendant's assertion of his right, (3) the reasons for the delay, and (4) any prejudice to the defendant. Id., 92 S.Ct. at 2192.
Our initial focus is on the length of the delay, for it is the "triggering mechanism" that activates our inquiry into the last three factors. Smith v. State, 409 So.2d 958, 961 (Ala.Cr.App.1981). The latter is necessary only if the length of the delay is "presumptively prejudicial" or "patently offensive." *647 Byrd v. State, 421 So.2d 1344, 1346 (Ala.Cr.App.1982).
McLemore became an "accused" for purposes of calculating the length of delay at the time he was arrested on August 23, 1987. See McCallum v. State, 407 So.2d 865, 867 (Ala.Cr.App.1981). The length of delay between this arrest and McLemore's trial was slightly over nine months. While we do not find this to be "presumptively prejudicial" or "patently offensive," we undertake a review of the remaining factors in light of the fact that McLemore was in jail during this entire period of time.
At the pre-trial hearing, the assistant district attorney asserted that "These cases were presented to the Grand Jury on 11/87, 12/87, 1/88, 2/88, and he was indicted on 3/9/88 [sic]. On each occasion, the cases were presented to the Montgomery County Grand Jury, but at each time, as noted on my file, the cases were continued because we needed the Department of Forensic Sciences reports." As noted above, these reports were prepared in October 1987 and January 1988, but were apparently not received by the prosecution until early February 1988.
There is no indication in the record that the delay in obtaining these reports was due to any intentional or deliberate act on the part of the prosecution. If, as defense counsel asserted at the hearing, "[a]ll it would have taken was a phone call" for the state to have obtained these reports earlier, then, at most, the state was negligent in not making this phone call. "Negligent inaction" is considered a neutral reason for delay and is to be weighed less heavily against the state than deliberate delay. Harper v. State, 420 So.2d 835, 839 (Ala. Cr.App.1982). See also Barker v. Wingo, 407 U.S. at 531, 92 S.Ct. at 2192.
McLemore did not initially assert his right to a speedy trial until six months after his arrest. While his assertion of this right and the fact that he renewed this assertion by way of his motion to dismiss weigh in his favor, id., 407 U.S. at 531-32, 92 S.Ct. at 2192-93, the fact that two-thirds of the delay occurred before McLemore ever asserted his right somewhat reduces the significance to be accorded the assertion. See Miller v. United States, 479 A.2d 862, 866 (D.C.App.1984).
McLemore was incarcerated for the entire nine months between his arrest on these charges and his trial. While we note that a prosecution witness stated during the suppression portion of the hearing on McLemore's motions that there were two other felony warrants outstanding against McLemore at the time of the August arrest, there was no evidence presented regarding these warrants, and we can make no determination as to whether McLemore's incarceration was attributable in any way to those charges. Compare Beech v. State, 439 So.2d 1331, 1334 (Ala.Cr.App. 1983). Assuming that McLemore was incarcerated due solely to the charges involved in this case, some prejudice to McLemore from such incarceration is obvious. Barker v. Wingo, 407 U.S. at 532-33, 92 S.Ct. at 2193.
However, we note that bond was set in each of the three cases. Although defense counsel asserted at the motion hearing that McLemore was unable to post these bonds, the record indicates that a request for a reduction of bond was not filed until March 3, 1988 (as part of the demand for a speedy trial), again some six months after McLemore's arrest. Moreover, there has been no showing that the delay in any way prejudiced McLemore's preparation of his defense such as by rendering him unable to locate necessary witnesses or impairing his ability to recall where he was on the morning of the crime.
None of the four Barker factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." Id. 407 U.S. at 533, 92 S.Ct. at 2193. Our initial finding that the length of the delay is not "presumptively prejudicial" or "patently offensive," together with our weighing of the remaining factors, convinces us that McLemore was not denied his right to a speedy trial.

*648 IX
During direct examination of Detective Moore, the investigating officer, the prosecutor asked, "What had you been informed by the victim in the case as to what occurred?" Over McLemore's hearsay objection, Moore briefly summarized what the victim had reported to him concerning the events of the 1:30 a.m. attack. Moore testified that the victim said she was awakened by the wind chimes hanging in the door between her den area and kitchen. A black male with a knife in his hand appeared from behind the curtains. This man raped the victim in the den area, and then took her to her bedroom where he raped and sodomized her. The victim had previously testified to these same facts, without objection, in response to the prosecutor's question, "What did you tell the police?" McLemore contends that Moore's narrative of these events was inadmissible hearsay.
"It is a well established rule in Alabama that [in cases involving sexual offenses,] testimony concerning the prosecutrix' complaint must be confined to the fact of the complaint." Lawson v. State, 377 So.2d 1115, 1118 (Ala.Cr.App.), cert. denied, 377 So.2d 1121 (Ala.1979).
"When [as in the case at bar,] the complaint does not constitute part of the res gestae but is received in corroboration of the prosecutrix's testimony, the general rule is that the details or particulars cannot be introduced, in the first instance by the state. Huggins v. State, 271 Ala. 428, 432, 123 So.2d 911 [1960], and authorities there cited.
"There are two cases, at least, where details of the complaint may be proved: (1) They may be elicited, on cross-examination, by the defendant; and where this is done only in part, the state on rebutting examination, may then proceed to prove the whole complaint. (2) Where testimony of prosecutrix is sought to be impeached, by attempting to discredit her story, it is permissible, by way of corroboration, for the state to prove such details. Barnett v. State, 83 Ala. 40, 44, 3 So. 612 [1887]."
Cox v. State, 280 Ala. 318, 323-24, 193 So.2d 759, 765 (1967). Accord, Aaron v. State, 273 Ala. 337, 345-46, 139 So.2d 309, 317 (1961), cert. denied, Aaron v. Alabama, 371 U.S. 846, 83 S.Ct. 81, 9 L.Ed.2d 82 (Ala.1962). See also C. Gamble, McElroy's Alabama Evidence § 178.01 (3d ed. 1977).
During cross-examination, McLemore's attorney asked the victim several questions concerning the description of her attacker as given by her to the police. The state was therefore entitled to prove the remainder of the details of the complaint. Cox; Aaron, supra.
It is clear that Moore's recitation of the details of the victim's complaint was nothing more than hearsay, see Huggins, 271 Ala. at 432, 123 So.2d at 914; E. Cleary, McCormick on Evidence § 246 at 730 (3d ed. 1984); Rule 801(c), Fed.R.Evid., and was admissible only because McLemore first elicited some of the details of that complaint. Contrary to the state's assertion in brief, Moore's recitation was not admissible because the victim (declarant) was present at trial and subject to cross-examination. I adhere to my dissent in Snell v. State, [Ms. 4 Div. 68, March 17, 1989] ___ So.2d ___, ___ (Ala.Cr.App.1989):
"If, as the majority asserts, `This court has held that ... "[h]earsay does not include statements of witnesses in the present trial subject to cross-examination by the party against whom the statements are offered,"' [see Reeves v. State, 456 So.2d 1156, 1159 (Ala.Cr.App. 1984) and cases cited therein,] then it has done so on authority other than orthodox, common-law evidentiary principles or the Federal Rules of Evidence. There is no basis in the common law for the admission of a declarant's extrajudicial statement just because the declarant is presently available and subject to cross-examination. See Bank of the State v. McDade. 4 Port. 252, 270 (1837) ("[N]o declaration can be given in evidence where the party who made such declaration ... can be produced and examined as a witness."). See generally 5 Wigmore, Evidence § 1362 (Chadbourn rev. 1974)." (Emphasis added.)
*649 As pointed out in that dissent, Alabama is a common-law evidence jurisdiction, and the "new rule" enunciated in Reeves and cases cited therein is a departure from common law precedent. With regard to the details of a complaint made by a rape victim, we are not permitted to make such a departure as our Supreme Court has held on numerous occasions that, in general, the details of such a complaint are inadmissible hearsay. See e.g., Cox v. State, supra; Aaron v. State, supra; Huggins v. State, supra; Lee v. State, 246 Ala. 69, 18 So.2d 706 (1944); Barnett v. State, supra. This court is utterly without authority to "declare unsound and overrule," Hampton v. State, 455 So.2d 149, 152 (Ala.Cr.App.1984), or "overturn or change the decisions of the Supreme Court in any manner." Passmore v. State, 47 Ala.App. 189, 191, 252 So.2d 115, 116 (1971) (emphasis added).

X
The trial court sentenced McLemore as a habitual offender to consecutive sentences of life imprisonment for each of the three offenses of which he was convicted. McLemore contends that consecutive sentences are impermissible under Ala.Code 1975, § 15-3-8, which provides in pertinent part: "Any act or omission declared criminal and punishable in different ways by different provisions of law shall be punished only under one of such provisions...."
It is McLemore's position that this section does not permit the imposition of consecutive sentences as it "prohibit[s] multiple punishment for the same alleged transaction supporting more than one conviction." Appellant's brief at 51 (emphasis added). However, the term "act or omission," as used in this statute, is "synonymous with the double jeopardy term `same offense,' thereby confining the statute's protection to the constitutional guarantee against double jeopardy." Sears v. State, 479 So.2d 1308, 1312 (Ala.Cr.App. 1985) (emphasis added). Double jeopardy protects a defendant against multiple punishments, as well as multiple trials, for the same offense. See Ohio v. Johnson, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).
One transaction or act can, of course, constitute violations of more than one criminal statute. Where this occurs, "the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). This "`test is symmetrical. It is satisfied only if each offense requires proof of elements not required by the other offense(s).'" McClendon v. State, 513 So.2d 102, 104 (Ala.Cr. App.1986) (quoting Fifteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeal 1984-85, 74 Geo.L.J. 499, 739 n. 801 (1986)).
"[B]urglary, even where the intent be to commit rape, and rape are separate and distinct offenses," Beckley v. State, 357 So.2d 1022, 1024 (Ala.Cr.App.1978), as each involves proof of facts not required by the other. See Ala.Code 1975, §§ 13A-7-5, 13A-6-61. The same is true concerning burglary and sodomy. See Ala.Code 1975, §§ 13A-7-5, 13A-6-63. First degree rape and first degree sodomy are similar in that both require proof of "forcible compulsion." Ala.Code 1975, §§ 13A-6-61, 13A-6-63. However, rape also requires proof of "sexual intercourse," as defined in § 13A-6-60(1), as opposed to sodomy, which requires the additional proof of "deviate sexual intercourse," as defined in § 13A-6-60(2). The definitions of "sexual intercourse" and "deviate sexual intercourse" being quite different, we conclude that rape and sodomy each "has at least one statutory element that the other does not." Sears, 479 So.2d at 1311. Although there was, as McLemore contends, only one "transaction," there were three different crimes committed during this continuing transaction and McLemore may be convicted and punished separately for each of them. See Clift v. State, 352 So.2d 838 (Ala.1977), cert. denied, 435 U.S. 909, 98 S.Ct. 1459, 55 L.Ed.2d 500 (1978); Beckley v. State, supra; Brown v. State, 367 So.2d *650 557, 559 (Ala.Cr.App.1978), cert. denied, 367 So.2d 559 (Ala.1979).
Where separate sentences are imposed on a defendant for two or more offenses, the sentences are to run consecutively unless the sentencing judge specifically provides otherwise. Ala.Code 1975, § 14-3-38; Rule 11, A.R.Crim.P. (Temp.); Hopper v. State, 420 So.2d 853, 854 (Ala. Cr.App.1982). "The question of whether a sentence for conviction of a crime is to be consecutive or concurrent is within the sound discretion of the trial judge. Clift v. State, 352 So.2d 838 (Ala.1977), [cert. denied, 435 U.S. 909, 98 S.Ct. 1459, 55 L.Ed.2d 500 (1978) ]." Brown v. State, 367 So.2d at 559. Accord, Hopper v. State, supra. Having determined that separate sentences were proper in that separate crimes were involved, we conclude that it was within the trial court's discretion to impose them consecutively.
For the reasons set forth in Part IV above, this cause is hereby remanded to the Montgomery Circuit Court for further proceedings as directed herein.
REMANDED WITH DIRECTIONS.
McMILLAN, J., concurs.
TYSON, J., concurs in part, dissents in part with opinion in which TAYLOR, P.J., and PATTERSON, J., join.
TYSON, Judge, concurring in part and dissenting in part.
I concur fully with nine of the issues in the majority opinion as ably written by Judge Bowen. This includes my concurrence in the remandment of this cause with directions for hearing in Montgomery Circuit Court, as set forth in part four of the majority opinion.
My only disagreement is with part nine of the majority opinion with reference to the details of the complaint testified to by Detective Moore at trial. I continue to adhere to the views expressed by the majority of this court in Snell v. State, [Ms. 4 Div. 68, March 17, 1989] ___ So.2d ___ (Ala.Crim.App.1989), which relies upon Reeves v. State, 456 So.2d 1156 (Ala.Crim. App.1984) and cases cited therein.
It is my understanding that in Snell, supra, the Supreme Court of Alabama has granted the writ of certiorari and the cause is presently pending before that court on that question.
In view of the above, I vote as herein indicated so that an orderly disposition of this cause may go forward.